**Randall GYLES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5321.**

Court of Appeals of Alaska.

Aug. 18, 1995.

Hearing Denied Oct. 13, 1995.

---

second degree, AS 11.41.436(a)(3), and three counts of sexual abuse of a minor, former AS 11.41.440(a)(2). He received a presumptive sentence of six years on the second-degree sexual abuse of a minor count and presumptive sentences of three years each on the remaining three counts. The sentences were partially concurrent and partially consecutive for a composite term of eight years.

While Gyles was serving this sentence, the Department of Corrections (DOC) set his mandatory parole release date for October of 1990. Gyles filed a *habeas corpus* petition arguing that DOC's calculation of his release date was incorrect and that he was entitled to release approximately four months earlier. The superior court agreed and, on June 26, 1990, ordered DOC to recalculate Gyles' release date. Based on the recalculation, Gyles was released on mandatory parole the next day, June 27, 1990.

In April of 1992, while Gyles was on mandatory parole, this court reversed the superior court's order requiring DOC to recalculate Gyles' mandatory release date; we concluded that the original DOC calculation had been correct. *State v. Gyles*, Memorandum Opinion and Judgment No. 2388 (Alaska App., April 1, 1992). As a result of our decision, Gyles was ordered to serve out the remaining four months of his sentence, based on the original mandatory release date. By then, however, Gyles' parole had been transferred to Idaho. The state declined to seek his extradition, allowing him to continue under the supervision of his Idaho parole officer.

As a condition of his mandatory parole in Alaska, Gyles had been ordered to participate in sexual offender treatment at the direction of his parole officer. Upon commencing parole supervision in Idaho, Gyles encountered problems gaining admission to a sexual offender treatment program, since he refused to acknowledge responsibility for his offenses. Gyles' original Idaho parole officer, Barbara Purdy, allowed Gyles to participate in individual counseling in lieu of sexual offender treatment. Purdy reported to Gyles' Alaska parole officer that Gyles was

Linda K. Wilson, Assistant Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

John K. Bodick, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

*OPINION*

BRYNER, Chief Judge.

Randall Gyles appeals an order entered by Superior Court Judge Milton M. Souter dismissing a post-conviction relief application in which Gyles claimed that he was unlawfully imprisoned because his parole had been unlawfully revoked. Specifically, Gyles asserted that the Alaska Parole Board lacked jurisdiction to revoke his parole and violated his constitutional privilege against self-incrimination. We conclude that Gyles' jurisdictional claim is meritless but that the superior court erred in summarily dismissing Gyles' self-incrimination claim.

Randall Gyles was convicted in 1986 of one count of sexual abuse of a minor in the

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

cooperative and in compliance with his treatment requirements.

During the summer of 1992, however, Purdy retired. Gyles fell under the supervision of parole officer Richard Wold, who proved less tolerant of Gyles' failure to enroll in a sexual offender treatment program. Wold believed Gyles to be "a dangerous sex-offender in need of treatment." In Wold's view, "[b]ecause [Gyles] has *never* admitted to [his] offenses, nobody will provide any sex-offender treatment. Alaska had this problem with Mr. Gyles and Idaho has this problem." Wold notified Gyles that he would be required to enroll in a treatment program; as a step toward enrollment—a step that is evidently routine in Idaho—Wold directed Gyles to submit to a polygraph examination: "We have scheduled Mr. Gyles for a polygraph examination . . ., hoping we can gain some insight and determine if he has re-offended or has had any contact with minors." On October 17, 1992, however, upon arrival at the polygraph examiner's office, Gyles declined to submit to the test.

Based upon Gyles' refusal to submit to the polygraph, the Idaho Department of Corrections closed interest in Gyles' case and instructed Gyles to report to Alaska parole authorities by November 1, 1992. Alaska Parole Officer Amy Rabeau spoke to Gyles by telephone on December 10, 1992, instructing him to return to Alaska by January 18, 1993. On December 23, 1992, Rabeau sent Gyles a confirming letter, indicating that a parole hearing was scheduled for January 26.

On January 13, 1993, Rabeau prepared a parole violation report, formally alleging that Gyles had violated the conditions of his parole by failing to obtain sexual offender treatment. Gyles subsequently returned to Alaska voluntarily, and Rabeau served him with the parole violation report at the parole revocation hearing on January 26, 1993. Because Gyles was unrepresented and had not previously been served with the report, the Parole Board continued the revocation hearing until February 11, 1993.

At the February 11 hearing, Gyles, through counsel, argued, in relevant part, that his failure to submit to the polygraph test in Idaho did not amount to a violation of his treatment requirement, since the polygraph examiner asked questions that might have required Gyles to incriminate himself. Gyles maintained that his parole could not properly be revoked for his assertion of the constitutional privilege against self-incrimination. The board nevertheless found that Gyles had violated parole by failing to obtain sexual offender treatment and ordered him to serve the remainder of his sentence.

Gyles filed a *pro se* petition for *habeas corpus* challenging the parole revocation order. The superior court deemed the petition an application for post-conviction relief and appointed counsel for Gyles. Gyles' attorney eventually submitted an amended application for post-conviction relief asserting two claims: first, that the parole board lacked authority to revoke Gyles' parole, because he was no longer on mandatory parole when served with the notice of violation on January 26, 1993; second, that Gyles' parole was unlawfully revoked because he exercised his privilege against self-incrimination by refusing to submit to the Idaho polygraph test.

After considering Gyles' application, the state's response, and Gyles' reply to the state's response, the superior court served Gyles with notice of its intent to dismiss the application. Gyles filed a reply to the notice. On April 22, 1994, finding Gyles' reply to be "nothing more than a rehashing of the arguments in the original application [that] does not cure the defects[,]" the superior court entered a final order dismissing the post-conviction relief application.

On appeal, Gyles renews the two arguments he raised in his application below. Gyles' first argument—that the parole board's jurisdiction over him had lapsed—presents a purely legal issue that lends itself to summary disposition. Under AS 33.16.010(a), a prisoner who, like Gyles, has been sentenced to a term of two years or more becomes eligible for mandatory parole. To establish the length of a mandatory parole term, subsection (c) of this statute relies on the amount of good time credit the prisoner earns while incarcerated: "A prisoner . . . shall be released on mandatory parole for the term of good time deductions credited under

AS 33.20[.]"[1] By contrast, AS 33.16.200, another parole statute, adopts a slightly different measure in fixing the duration of the parole board's authority over a prisoner released on mandatory parole: "[T]he board retains custody of ... mandatory parolees until the expiration of the maximum term or terms of imprisonment to which the parolee is sentenced."[2]

In most cases and for most purposes involving mandatory release, there is no difference between these two statutory measures: adding a prisoner's good-time deductions to the amount of pre-release time served will equal the maximum term of imprisonment that prisoner received. Gyles' case, however, involves a unique set of circumstances. As we have already indicated, the superior court ordered Gyles released on mandatory parole beginning June 27, 1990, approximately four months before the October mandatory release date that DOC had originally calculated.[3] This court subsequently reversed the superior court's order. Our decision resulted in the reinstatement of approximately four months of imprisonment, which in effect meant that Gyles, who was by then in Idaho, had been paroled four months prematurely.

Had Gyles returned immediately to serve out the reinstated four-month term and then been re-released on mandatory parole, his initially premature release would have had no significant effect on the expiration date of his mandatory parole or the expiration date of the parole board's jurisdiction over his case.[4] But as long as Gyles did not serve the added four-month term, the expiration date of his

parole, as fixed by AS 33.16.010(c), would theoretically arrive four months sooner than the expiration of the parole board's jurisdiction over his case, as fixed by AS 33.16.200.

Gyles in fact did not return to serve out the reinstated portion of his sentence. He remained on mandatory parole until the initial date of his parole revocation hearing, January 26, 1993. Gyles calculates that, under AS 33.16.010(c), his parole expired on January 7, 1993, almost three weeks before his appearance before the parole board. Since Gyles was not served notice of the alleged parole violation until the hearing, and since no parole violation warrant had previously issued, Gyles argues that the board lacked jurisdiction over his case. The state, in response, insists that the expiration of Gyles' mandatory parole must be governed by AS 33.16.200, which gave the board jurisdiction over Gyles' case until the expiration of the maximum term of imprisonment Gyles received. According to the state, Gyles should thus be deemed to have remained on parole until April 24, 1993, despite his failure to serve his added jail term.

For purposes of deciding Gyles' case, we think it immaterial whether Gyles was technically on parole when his revocation hearing was held. It is undisputed that the event triggering Gyles' parole violation hearing was his refusal to submit to the polygraph examination in Idaho at the direction of his parole officer. That event occurred in October of 1992, when Gyles was still plainly on mandatory parole, even under his own theory of expiration. And just as plainly, regardless of

---

1. AS 33.16.900(7) defines mandatory parole as "the release of a prisoner who was sentenced to one or more terms of imprisonment of two years or more, for the period of good time credited under AS 33.20, subject to conditions imposed by the board and subject to its custody and jurisdiction[.]"

2. See also AS 33.20.040(a), which governs the custody of released prisoners and the parole board's jurisdiction over them:

> Except as provided in (c) of this section, a prisoner released under AS 33.20.030 shall be released on mandatory parole to the custody and jurisdiction of the parole board under AS 33.16, until the expiration of the maximum term to which the prisoner was sentenced, if the term or terms of imprisonment are two

years or more. However, a prisoner released on mandatory parole may be discharged under AS 33.16.210 before the expiration of the term.

3. DOC had originally given Gyles 921 days of good time (935 minus 14 forfeited days); after recalculation, Gyles was awarded 1043 days of good time.

4. The two dates would have continued to correspond: adding Gyles' total time served to his accumulated good-time deductions (the term of parole prescribed by AS 33.16.010(c)) would still have yielded a result approximately equivalent to "the expiration of the maximum term or terms of imprisonment to which" he had been sentenced (the parole board's last day of jurisdiction as prescribed by AS 33.16.200).

the date fixed by AS 33.16.010(c) for expiration of Gyles' parole, the statute governing the parole board's jurisdiction over Gyles (AS 33.16.200) gave the board continuing jurisdiction over Gyles' case until the expiration of the maximum term to which Gyles had been sentenced—a date that did not arrive until April of 1993, well after the hearing. Because Gyles was charged with a violation that indisputably occurred while he was still on parole under AS 33.16.010(c), and because notice of the violation was served on Gyles and resolved while the board indisputably retained jurisdiction over Gyles under AS 33.16.200, the validity of the board's action does not hinge on whether Gyles is deemed to have been technically on parole at the time of his hearing. The superior court did not err in rejecting Gyles' jurisdictional claim.

■ We turn now to Gyles' self-incrimination claim, which is more difficult to characterize as a purely legal issue than was his jurisdictional argument.[5] On the one hand, Gyles broadly argues that he had a right to invoke the privilege against self-incrimination in response to any questions dealing with sexual misconduct—even questions dealing with the misconduct for which he was convicted. This argument is mistaken in its breadth. On the other hand, the superior court appears to have concluded that Gyles had no right to claim the constitutional privilege, even as to questions seeking information about sexual offenses for which Gyles has not been convicted. This conclusion also sweeps too broadly.

■ In *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the United States Supreme Court addressed the federal constitution's Fifth Amendment privilege against self-incrimination in the context of a probation case. The Court held that a defendant who has been convicted and placed on probation does not lose the protection of the constitutional privilege, "notwithstanding that [the] defendant is imprisoned or on probation at the time [of the] incriminating statements[.]"[6] For this reason, the state may not revoke, or threaten to revoke, probation for a valid invocation of the privilege. *Id.* at 435, 104 S.Ct. at 1146. As the Arizona Supreme Court has recently recognized, "*Minnesota v. Murphy* makes clear that the state cannot make waiver of the privilege against self-incrimination a condition of probation." *Eccles*, 877 P.2d at 800 (citation omitted); *see also State v. Gleason*, 576 A.2d 1246, 1251 (Vt.1990).

■ A probationer or parolee cannot validly invoke the constitutional privilege, however, when there is "no real or substantial hazard of incrimination." *State v. Gonzalez*, 853 P.2d 526, 530 (Alaska 1993) (quoting *E.L.L. v. State*, 572 P.2d 786, 788 (Alaska 1977)). As expressly recognized in *Minnesota v. Murphy*, a probationer may be questioned concerning matters relevant to probation that pose "no realistic threat of incrimination in a separate criminal proceeding." 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7.[7] The burden of establishing a hazard of incrimination is on the claimant. *McConkey v. State*, 504 P.2d 823, 825 (Alaska 1972). But this burden is not a great one: " 'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' " *Id.* (quoting *Hoffman v. United*

---

5. As a threshold matter, we must mention the state's contention that, by agreeing to be supervised on parole in Idaho and to follow the instructions of his Idaho parole officer, Gyles waived any claim of self-incrimination he might otherwise have had. It is well settled that a parolee's failure to challenge an invalid condition of parole upon its imposition does not amount to a waiver barring a subsequent claim of invalidity. *See Roman v. State*, 570 P.2d 1235, 1241–42 (Alaska 1977); *State v. Eccles*, 179 Ariz. 226, 877 P.2d 799, 802 (1994) (en banc). The state's waiver argument thus lacks merit.

6. Although *Minnesota v. Murphy* dealt with probation, it is clear that, for present purposes, the ruling applies equally to parole. *See Roman*, 570 P.2d at 1244.

7. The Supreme Court went on to make clear that the threat of divulging information that might lead to revocation of probation could not justify invocation of the privilege against self-incrimination, since revocation proceedings are not criminal in nature. *Id.*

*States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 817–18, 95 L.Ed. 1118 (1951)).

■ In the present case, to the extent Gyles' post-conviction relief application alleges a violation of his privilege against self-incrimination based on his refusal to answer questions concerning the conduct for which he had been convicted, Gyles has failed to meet even this modest burden. Gyles was convicted and sentenced in 1986 and he has no remaining right of direct appeal. Gyles mentions in his application that he had a federal *habeas corpus* action pending when he transferred parole to Idaho, but he makes no claim that the action was still pending when he refused to take the polygraph examination. Nor does he set forth any factual circumstances to establish that the *habeas* action, even if still pending, might give rise to a realistic hazard of incrimination. Under the circumstances, Gyles has failed to show that he had a valid claim of privilege as to questions dealing with the offenses for which he already stands convicted.[8]

■ The same cannot be said of Gyles' claim that he properly invoked his privilege as to questions dealing with other potential criminal misconduct—acts of abuse for which he had not previously been prosecuted or convicted. Under *Minnesota v. Murphy,* 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7 a state may compel a probationer to answer incriminating questions relating to unprosecuted offenses only upon express recognition of the probationer's immunity from criminal prosecution as a result of the answers given. As the Vermont Supreme Court recently held: "If the questions asked of a probationer call for answers that would incriminate him in a pending or later criminal prosecution, the State will have created the classic penalty situation if it asserts, either expressly or by implication, that an invocation of the privilege would result in probation revocation." *Gleason,* 576 A.2d at 1251.

In the affidavit Gyles filed in support of his application for post-conviction relief, Gyles expressly alleged, in relevant part, that

> Mr. Fisher [the polygraph examiner] told me the questions he'd ask me during the polygraph examination would convey [sic] not only the offenses for which I was convicted but also any and all past behavior. I refused to cooperate based upon Mr. Fisher's line of questioning of my behavior prior to my conviction, without the advice of an attorney or one pressent [sic] at questioning by Fisher.

This sworn statement may reasonably be read as an allegation that Gyles asserted the constitutional privilege, not in response to questions dealing with the offenses for which he was convicted, but with respect to other potentially unlawful conduct.

Under *McConkey,* Gyles' claim must be deemed valid "unless it is 'perfectly clear ... that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." *Id.* at 825–26 (quoting *Hoffman v. United States,* 341 U.S. at 488, 71 S.Ct. at 818). The record contains nothing suggesting that Gyles had been assured immunity from prosecution for any newly revealed misconduct. If Gyles' sworn statement is taken in the light most favorable to Gyles' case, as it must be at the first stage of a post-conviction relief proceeding,[9] the statement must be read to assert that Gyles refused to take the polygraph to avoid potential self-incrimination, and the facts set forth

8. *See, e.g., State v. Carrizales,* 191 Wis.2d 85, 528 N.W.2d 29, 32 (1995); *Gleason,* 576 A.2d at 1251.

9. In *DeJesus v. State,* 897 P.2d 608, (Alaska App., 1995), we stated:
 Alaska Criminal Rule 35.1 governs post-conviction relief applications. This rule establishes "a three-phase process, the first phase involving the filing of the application and the assessment of its sufficiency to set out a *prima facie* case for relief, the second phase involving discovery and review for genuine issues of material fact, and the third involving the evidentiary hearing and formal resolution of disputed facts." *Parker v. State,* 779 P.2d 1245, 1246 (Alaska App.1989) (footnote omitted). Here, the superior court disposed of DeJesus' application in the first phase of the process, ordering the application dismissed for failure to set out a *prima facie* case for relief. In reviewing the superior court's decision, we must thus determine whether the application sets out facts which, if true, would entitle DeJesus to the relief claimed. *See* Alaska R.Crim.P. 35.1(f)(2); *State v. Jones,* 759 P.2d 558, 565 (Alaska App.1988).

by Gyles demonstrate a sufficient hazard of incrimination to support a valid claim of privilege.

 Other information in the record certainly casts doubt on the accuracy of the assertion in Gyles' affidavit, suggesting that Gyles may have declined to cooperate out of a reluctance to discuss the conduct that led to his conviction. This contradictory information, however, indicates the potential existence of disputed facts whose resolution would require an evidentiary hearing. The contradictory information does not defeat the facial adequacy of Gyles' post-conviction relief application, since the facts alleged therein are assumed to be true for purposes of deciding the appropriateness of dismissal on the pleadings. For this reason, we conclude that

the superior court erred in dismissing Gyles' application on the pleadings, without allowing the case to proceed to discovery and an eventual hearing, if necessary.[10]

The superior court's order of dismissal is VACATED, and this case is REMANDED for further proceedings consistent with this decision.

MANNHEIMER, J., not participating.

---

**10.** While Gyles argues that his privilege against self-incrimination shields him from discussing the misconduct for which he was convicted—an argument that we have rejected here—he does not assert that the condition of parole requiring him to obtain treatment is *per se* invalid or that his parole could not properly be revoked for violating that condition in the absence of a valid claim of self-incrimination. Accordingly, although both parties devote considerable attention to the issue of whether a probationer or parolee can be forced, as a condition of probation or parole, to admit responsibility for the sexual misconduct that resulted in the conviction, we have no occasion to consider this difficult question. *Cf. Nelson v. Jones,* 781 P.2d 964, 969 (Alaska 1989). *Compare State v. Imlay,* 249 Mont. 82, 813 P.2d 979 (1991), *with Asherman v. Meachum,* 957 F.2d 978, 982–83 (2d Cir.1992) (prisoner may be terminated from home-release for refusing to discuss his crime); *State v. Eccles,* 179 Ariz. 226, 877 P.2d 799, 801 (1994) (defendant must answer questions about crimes for which he has been convicted, even if answers may result in probation revocation); *People v. Ickler,* 877 P.2d 863, 866–67 (Colo.1994) (defen-

dant who pled guilty and subsequently refused to admit crime for sex offender evaluation violated conditions of his probation; to not revoke probation under such circumstances would encourage sex offenders to deny crimes to avoid participation in treatment); *Henderson v. State,* 543 So.2d 344, 346 (Fla.Dist.App.1989) (treatment that requires sex offender to admit responsibility for behavior does not violate right against self-incrimination because admission comes after conviction); *State v. Gleason,* 576 A.2d 1246, 1250–52 (Vt.1990) (special condition of probation which required defendant to discuss sexual issues surrounding his convictions for sex offender treatment did not violate right against self-incrimination); *State v. Ralph,* 41 Wash.App. 770, 706 P.2d 641, 646 (1985) (probation properly revoked where defendant refused to submit to evaluation without which he could not be accepted in sexual offender treatment); *State v. Carrizales,* 191 Wis.2d 85, 528 N.W.2d 29, 32 (1995) (right of self-incrimination not violated by sex offender treatment that required defendant to admit committing the sexual assault for which he had been convicted).