**Charles R. COVINGTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5932.

Court of Appeals of Alaska.

May 23, 1997.

---

**2.** Judge Souter imposed a concurrent term of six months for DWI.

Darrel J. Gardner, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for Appellant.

John K. Bodick, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

*OPINION*

COATS, Judge.

In 1983, Charles R. Covington was convicted of two counts of lewd and lascivious acts toward a child and four counts of sexual assault in the first degree.[1] Covington appealed several times. Ultimately, Superior Court Judge Jay Hodges sentenced Covington to a composite term of 15 years of imprisonment with 2½ years suspended, followed by a period of 5 years of probation.

Covington was released on November 7, 1991, on mandatory parole to the Tennessee parole authorities. Covington's parole requirements included general parole conditions as well as eight supplemental conditions, including Condition # 21:

*SEX OFFENDER PROGRAMMING:* I will actively participate in approved sex offender monitoring/counseling/treatment as directed by my parole officer. I will sign and abide by the conditions of a treatment agreement established by the treatment program. I will continue active participation and attendance in sex offender programming to my parole officer's satisfaction. I will obtain the prior permission of my parole officer before voluntarily discontinuing sex offender programming. If I am released, removed or terminate[d] from this program (temporarily or permanently) for any reason, I will notify my parole officer the next working day. I agree to allow my parole officer access to any information obtained by the sex offender programming personnel, including my attendance and performance in the program.

In 1994, Covington applied to Luton Mental Health Center's sex offender treatment program in Tennessee. Covington's parole officer agreed that the Luton Hospital program would be an acceptable sex offender treatment program for Covington to participate in. As a prerequisite for entering Luton's program, however, the applicant must accept responsibility for his sex offense. Because Covington refused to admit his past offenses, Luton would not admit him into its program. Covington asserts that no sex offender program will accept him due to his refusal to admit guilt.

Covington's Tennessee parole officer reported to the Alaska Parole Board that "No sex offender program will accept [Covington] because he will not admit to being guilty of the offense." On April 5, 1994, an Alaska probation officer issued an interstate compact to the Tennessee officer ordering Covington to comply with sex offender counseling mandated by condition # 21 of his Alaska parole conditions or face return to Alaska. On October 6, 1994, Covington's Tennessee parole officer issued a parole violation report recommending that Tennessee close interest in the case, because "[Covington] is a sex offender who is refusing to admit to guilt, so no sex offender program will accept him."

On November 22, 1994, the Alaska Board of Parole issued a parole arrest warrant, which was forwarded to Tennessee and served on Covington by a Tennessee officer on December 9, 1994. The only alleged violation of Covington's parole is his failure to comply with condition # 21, participation in a sex offender program. On January 6, 1995, the Tennessee parole authorities held a probable cause hearing, and determined probable cause existed to find that Covington violated Supplemental Condition of Parole # 21.

While in Tennessee, Covington filed numerous actions in both state and federal court to block his extradition to Alaska. The courts denied all of these motions and petitions. Covington was held in custody by Tennessee officials until March 24, 1995, when Alaska State Troopers transported him back to Alaska. The state asserts that the troopers followed standard procedure by waiting to extradite Covington until they were relatively certain that extradition would not be blocked by the Tennessee courts.

On April 20, 1995, the Alaska Parole Board held a final revocation hearing, determined that Covington had violated his parole by not complying with parole condition # 21, and

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Former AS 11.15.134; former AS 11.41.410(a)(4)(B).

imposed the remainder of his sentence to be served in custody. Covington filed actions in superior court protesting the parole board's actions. Superior Court Judge Mark C. Rowland denied Covington's requests for relief.

Covington raises three main issues on appeal: (1) whether the parole board's delay in holding a final parole revocation hearing violated Covington's procedural due process rights; (2) whether the parole board violated Covington's substantive due process rights by revoking his parole for not participating in a sex offender treatment program where the program refused to treat Covington due to his refusal to discuss the offenses for which he had been convicted; and (3) whether the parole board erred by finding that Covington violated condition # 21 of his parole.

 The parole board may not revoke parole without affording the parolee due process of law, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Alaska Constitution. *Paul v. State*, 560 P.2d 754, 756 (Alaska 1977); *see also Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2601–02, 33 L.Ed.2d 484 (1972). Absent a denial of a constitutional right, however, the actions of a parole board are afforded only limited review in court. *See Newell v. State*, 620 P.2d 680, 682–83 (Alaska 1980) (stating courts "have only limited power to review Parole Board decisions, and cannot usurp the authority of the Board").

 Covington first contends that the parole board violated his procedural due process rights by holding a final revocation hearing more than 120 days after his arrest. On December 9, 1994, a Tennessee officer executed the parole warrant and arrested Covington. Covington was held in custody by Tennessee officials until March 24, 1995, when he was transferred to the control of the Alaska State Troopers. The Alaska Parole Board held the final revocation hearing on April 20, 1995. Covington asserts that the parole board violated his procedural due process rights by holding the final revocation hearing 131 days after Covington's arrest, in violation of the 120–day period provided by AS 33.16.220(f).

Alaska Statute 33.16.220(f) provides:

> The board shall hold a final revocation hearing no later than 120 days after a parolee's arrest[.]

The statute provides a sole exception to the 120–day period, when criminal charges are pending against the parolee:

> When the basis for the revocation proceeding is a criminal charge, the parolee may request, or the board upon its own motion may propose that further proceedings on the revocation be delayed. In making the determination to delay further proceedings, the board shall consider prejudice that may result to the parolee's and the state's interests in the pending criminal case and the parolee's decision to delay final revocation proceedings....

AS 33.16.220(g). There is no separate statutory provision that provides an exception to the 120–day period when the parolee is detained in a foreign jurisdiction for reasons other than pending criminal charges. However, from the record it seems clear that the delay in the revocation hearing was caused by Covington's efforts to block extradition from Tennessee to Alaska. Covington was transported back to Alaska on March 24, 1995. The parole board held its final hearing on April 20, 1995. Since the delay in transporting Covington back to Alaska is attributable to Covington, we believe that this delay is chargeable to Covington and that his parole revocation hearing was held well within the 120–day time period. If we concluded otherwise, any Alaska parolee who absconded or transferred out of state might avoid revocation by simply fighting extradition to Alaska.[2]

---

**2.** Covington does not offer any evidence that he was prejudiced by the delay in the parole revocation hearing. The state's position is that in the absence of prejudice caused by a delay in the hearing, the only remedy which was available to Covington was to compel compliance with the act by requiring the parole board to hold a revocation hearing.

Alaska courts have not addressed whether a parolee must establish that he was prejudiced by the parole board's untimeliness in holding a revocation hearing in order to obtain relief. Legis-

We next turn to Covington's contention that the parole board violated his substantive due process rights by revoking his parole because he was not participating in a treatment program due to the program's refusal to admit Covington solely because he refused to admit his past offenses.

■ This court in *State v. Stores*, 816 P.2d 206 (Alaska App.1991), examined the principles and goals of parole:

> Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed.... The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules.

*Id.* at 208–09 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972)). Thus, while a parolee is entitled to more rights than an incarcerated prisoner, parole may be revoked if the parolee fails to comply with his or her parole conditions. *Id.* at 209. As a threshold matter, however, parole conditions must be constitutional. The constitutionality of a parole condition is a question of law to which this court applies its independent judgment. *Dye v. State*, 650 P.2d 418, 420 n. 5 (Alaska

App.1982); *see Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

■ Covington points out that he has consistently denied committing the offense for which he was convicted. Because of this he contends that no sex offender treatment program will accept him. Covington argues that he did not commit a volitional act of noncompliance of his parole conditions. Therefore, he asserts the parole board's revocation of his parole due to the program's refusal to treat him is a violation of his substantive due process rights.

Covington urges this court to adopt the Washington Court of Appeals' rationale in *State v. Peterson*, 69 Wash.App. 143, 847 P.2d 538 (1993). In *Peterson*, the defendant, a convicted rapist, was released from incarceration and placed in a community placement program. As a condition of community placement, he was required to participate in crime-related treatment or counseling services as directed by his corrections officer. *Id.* 847 P.2d at 539. During screening for the program that his corrections officer selected, the defendant denied that he had a problem. The program declined to accept him based upon this denial. The court determined that treatment was not available to the defendant because the program did not consider him amenable to treatment. The court

---

lative history indicates that absent prejudice or patently unreasonable delay, reinstatement to parole is not the appropriate remedy for a delayed parole hearing.

> If the procedural safeguard denied a parolee in a revocation proceeding is the untimeliness of the hearing, the exceptional remedy applied is the reinstatement of the parolee to parole.
> If the board was to deny a timely hearing under the statute, the resultant remedy should be proportionate to the violation. The purpose underlying the requirement for a timely hearing is to enable the alleged violator to respond to the alleged violation while contrary evidence may still be available and the issue is fresh in everyone's mind. A short delay in the revocation proceeding would result in little prejudice to the parolee, so release from incarceration pending the hearing is an appropriate remedy. However, where the delay is significant and prejudice to the parolee is shown, reinstatement to parole status may be appropriate. This is the exceptional situation.

*Commentary to Alaska Parole Act*, Supp. No. 42, 1985 Alaska House Journal at p. 20–21 (April 4, 1985) (citation omitted).

Other jurisdictions have addressed whether a parolee's right to due process was violated by a delay in the parole revocation hearing. These courts have held that a due process violation occurs only when the delay in holding the revocation hearing is unreasonable or prejudicial. *See Meador v. Knowles*, 990 F.2d 503, 506 (9th Cir.1993) (stating that parolees must demonstrate prejudice to their ability to present evidence at the final hearing); *Camacho v. White*, 918 F.2d 74, 79 (9th Cir.1990); *Vargas v. U.S. Parole Com'n*, 865 F.2d 191, 194 (9th Cir.1988). Absent prejudice or unreasonable delay, other jurisdictions have held that the proper remedy for a delay in holding a parole revocation hearing is for the court to compel the parole commission to hold a revocation hearing. Where the revocation hearing has been held, no further remedy is available to the parolee. *See Camacho v. White*, 918 F.2d at 79–80; *Heath v. U.S. Parole Com'n*, 788 F.2d 85, 89–90 (2nd Cir.1986); *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C.Cir. 1983).

held that the defendant did not commit a volitional act of noncompliance and therefore the state failed to show the defendant's noncompliance with the terms of his parole.

The state argues that Covington's parole conditions required him to actively participate in a sex offender treatment program. The state contends that Covington's failure to enroll in or complete a sex offender treatment program, coupled with the nature of his offense, warrants the revocation of his parole.

This court recently decided a factually similar case in *Gyles v. State*, 901 P.2d 1143 (Alaska App.1995). In *Gyles*, the parole board found that Gyles did not comply with a condition of his parole that required him to participate in a sex offender treatment program because he refused to answer any questions concerning prior sexual misconduct, claiming that answering the questions would violate his right against self-incrimination. The parole board revoked Gyles's parole. The trial court found that Gyles had no right to refuse to answer because Gyles had already been convicted and therefore faced no threat of incrimination. *Id.* at 1148. We concluded that Gyles had not shown any basis for refusing to discuss the crimes for which he had already been convicted. However, we concluded that Gyles had established a sufficient basis for claiming the privilege as to crimes or misconduct for which he had not previously been convicted. *Id.* at 1149–50. We observed that Gyles had not challenged the constitutionality of the parole condition itself. *Id.* at 1150 n. 10. In the instant case, Covington raises the issue that Gyles did not: can the parole board revoke parole due to a parolee's failure to obtain sex offender treatment where the failure to obtain treatment is caused by the parolee's refusal to admit or discuss offenses which he has consistently denied committing. Covington has not claimed that his failure to answer any questions concerning his prior conduct is based on the exercise of his right against

self-incrimination. Rather, Covington contends that it is impossible for him to discuss his prior offenses because he did not commit them. Therefore, he asserts that revoking parole because of the treatment program's refusal to administer treatment is a violation of his substantive due process rights.

Covington asks us to rule that his parole cannot be revoked because his denial of guilt is genuine and his failure to comply with his parole condition is a nonvolitional act.[3] However, Covington's case provides no basis for concluding that his refusal to acknowledge guilt is anything but the willful act it seems to be.

Covington stands finally convicted of engaging in sexual misconduct; the issue of his guilt was not open to relitigation before the parole board. The board was thus entitled to rely on the fact of Covington's conviction to conclude that he had in fact engaged in sexual misconduct. Nothing in the record suggests that Covington suffers from the type of deep-seated denial that might make it psychologically impossible for him to recognize or admit his misconduct. Absent some evidence to the contrary, the board could properly draw the obvious and reasonable inference that common sense suggests in these circumstances: that Covington's continued refusal to acknowledge his guilt amounts to nothing more than deliberate obstinacy—that is, a willful failure to comply with the requirement that he participate in treatment.

 Covington's final contention is that the parole board's decision to revoke his parole was not supported by sufficient evidence. Factual determinations of the parole board are judicially reviewable to determine whether the decision was supported by substantial evidence. *See Anchorage v. Coffey*, 893 P.2d 722, 726 (Alaska 1995); *Handley v. State*, 838 P.2d 1231, 1233 (Alaska 1992). The parole board's exercise of its discretionary authority is reviewed under the "reason-

---

**3.** The majority of jurisdictions which have considered the question appear to have concluded that a defendant's probation can be revoked where a defendant is terminated from a treatment program for a refusal to discuss the offenses for which he has previously been convict-

ed. *See, e.g., State v. Woveris*, 138 N.H. 33, 635 A.2d 454 (1993); *State v. Gleason*, 154 Vt. 205, 576 A.2d 1246 (1990); *State v. Peck*, 149 Vt. 617, 547 A.2d 1329 (1988); *State v. Bennett*, 35 Wash. App. 298, 666 P.2d 390 (1983).

able basis" standard, to insure that its determinations are supported by evidence in the record as a whole and there is no abuse of discretion. *See Lake and Peninsula Borough v. Local Boundary Com'n,* 885 P.2d 1059, 1062 (Alaska 1994); *Cook Inlet Pipe Line Co. v. Alaska Public Utilities Com'n,* 836 P.2d 343, 348 (Alaska 1992).

The parole board found that Covington violated a condition of his parole:

> VIOLATION A: Since his release to the State of Tennessee on November 7, 1991, Charles R. Covington failed to enroll in or complete a sex offender treatment program. This is a violation of parole condition number twenty-one. This finding is based on the evidence and testimony presented at the hearing.
>
> Based on the nature of your offense and the fact that you failed to cooperate with sex offender treatment providers, the Board voted to revoke your parole.

Covington contends that the state did not meet its burden of proving, by a preponderance of the evidence, that Covington violated a condition of his parole. Covington argues that he satisfied condition #21, which required him to "actively participate" in a program, by merely applying to the Luton program. The state contends that Covington's application to the program, but refusal to discuss his offenses, does not constitute compliance with the condition.

Based upon the record of this case, the parole board could determine that Covington willfully refused to admit his prior offenses in spite of his guilt of those offenses, and that this action resulted in Covington's ineligibility for sexual offender treatment. The board could determine that sexual offender treatment was critical for Covington's rehabilitation and that his failure to obtain that treatment was a violation of his parole conditions and constituted a sufficient ground to revoke his parole.

AFFIRMED.

MANNHEIMER, J., not participating.