**William BAILEY, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF CORRECTIONS, BOARD OF PAROLE, Appellee.**

**No. S–13079.**

Supreme Court of Alaska.

Jan. 22, 2010.

---

**36.** *See id.* at 427–28; MODEL PENAL CODE, note 28, above, § 2.03, cmt. 3, at 261–64.

**112**

Charles Winegarden, Kenai, for Appellant.

Marilyn J. Kamm, Assistant Attorney General, and Richard A. Svobodny, Acting Attorney General, Juneau, for Appellee.

Before: FABE, WINFREE, and CHRISTEN, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

In this appeal we review the revocation of William Bailey's parole. After his conviction Bailey was ordered to "actively participate and successfully complete substance abuse treatment if offered" during his incarceration. At Bailey's initial parole hearing, the parole board directed Bailey to apply to a residential substance abuse treatment program. Bailey applied to a treatment program, but was rejected after raising legitimate concerns about the program's restrictions on his right to access the courts. Bailey successfully grieved those restrictions, but did not then reapply to the treatment program. The parole board revoked Bailey's mandatory parole on the ground that Bailey breached the court order to complete substance abuse treatment if such treatment was offered. The superior court affirmed the parole board's decision.

We conclude Bailey lacked adequate notice that his failure to reapply to and successfully enroll in a treatment program after he prevailed with his grievance would lead to revocation of his parole. We therefore reverse the superior court's affirmance of the parole board's decision and remand for proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

Bailey was convicted in 2001 of three counts of second-degree theft. In June 2002 Bailey was sentenced to ten years in prison, "with four years suspended and six years to serve." The judgment ordered Bailey to "actively participate and successfully complete substance abuse treatment if offered" during his incarceration.

In October 2002 Bailey was transferred to Wildwood Correctional Center (Wildwood). There Bailey signed a Prisoner Notice of Court–Ordered Treatment indicating he understood that if he refused to participate in a substance abuse treatment program offered to him, his mandatory parole could be revoked. Less than a month later Bailey was transferred to Spring Creek Correctional Center (Spring Creek). There Bailey submitted a Request for Interview asking for a "status check with regards to [his] court ordered treatment." The Department of Corrections (DOC) responded that Bailey had not previously applied to Wildwood's residential treatment program and that the parole officer at Wildwood was "not interested in reviewing [Bailey] at this time."

In February 2003 Bailey was transferred to a detention center in Arizona. Bailey later testified before the parole board that he applied for substance abuse treatment in Arizona but was placed on a waiting list. In apparent anticipation of his May 2004 transfer back to Spring Creek, Bailey completed an application for a treatment program at the Salvation Army Clitheroe Center (Clitheroe) in March 2004. Bailey's participation in Clitheroe's inpatient program would have required a furlough, but Bailey's furlough application was denied. Bailey was advised to complete a community work service program at Hiland Mountain Correctional Center (HMCC), after which Bailey would be allowed to reapply for a furlough. Bailey was transferred to HMCC in July 2004, but was transferred back to Spring Creek in November 2004.

In January 2005 Bailey again applied for a furlough, but he was advised to complete the Wildwood residential treatment program before his application for a furlough would be considered.

In April 2005 parole officer C.S. Pianko issued a Parole Violation Report, charging that Bailey had violated the terms of his judgment of conviction by "fail[ing] to actively participate and successfully complete substance abuse treatment offered to him while incarcerated." Pianko wrote that "Prisoner Bailey has been given numerous opportunities to engage in substance abuse treatment" while incarcerated, including opportunities to apply to the Wildwood program in December 2004 and in January 2005. Pianko recommended that Bailey's "statutory good time be revoked."

The parole board held Bailey's initial hearing on June 22, 2005. When the parole board asked Pianko for evidence supporting the violation charge, Pianko answered:

> Actually in good faith, I cannot present any substantial supporting evidence.... He has never verbally said that he would not (indiscernible) in substance abuse treatment and ... he has never physically or verbally refused to deny [sic] or actually verbalized or documented the fact that he does not want to [indiscernible] type of substance abuse treatment.

Pianko asked to withdraw the request to revoke Bailey's parole, but the parole board proceeded with the hearing.

At the hearing Bailey raised concerns about Wildwood. He explained that he is disabled[1] and had doubts about Wildwood's compliance with the Americans with Disabilities Act (ADA).[2] Bailey claimed that due to his disability (degenerative arthritis), he would be unable to go downstairs to do his own laundry or to access the law library and church facilities located on an upstairs floor.

The parole board continued the revocation hearing for six months. Bailey was ordered to apply to the Wildwood residential treatment program in the interim. The parole

---

1. In a decision that was effective as of 1998, Bailey was found to be disabled under the Social Security Act.

2. Bailey alleged that he sustained an injury at Wildwood in 2002. In 2004 he sued DOC for failure to comply with ADA requirements.

board chairman elaborated to Bailey: "[W]e want to see what the reply is, if you're in the program at that time, that's fine. If you're not, then we'll review why you did not get into the ... program and we'll take that issue up in December." The parole board addressed Bailey's concerns about Wildwood by saying that Bailey could also "if he wishe[d]" apply to a residential treatment program in Arizona, although neither the likelihood of arranging a transfer back to Arizona nor Bailey's prior experience with waiting lists for treatment in Arizona was discussed. The parole board hearing ended immediately thereafter. A written Notice of Board Action reiterated that Bailey was ordered to "apply for substance abuse treatment while incarcerated" and that Bailey's case would be continued until December 2005.

Bailey was given an application for the Wildwood program within a week of the parole board hearing. A July 5 letter from the parole board administrator informed Bailey that the Wildwood program "is able to accommodate inmates with disabilities since everything related to the ... program is on the first floor" and "[t]here is no requirement for the use of stairs." No mention was made of access to laundry, the law library, or church facilities. The letter noted that "it is the Board's expectation that [Bailey] will be actively participating in an institutional substance abuse program." The letter concluded with notice of Bailey's right to ask for reconsideration.

In a July 11 letter Bailey requested reconsideration of the parole board's June 22 order, repeating his concerns about Wildwood's ADA compliance and explaining that being able to do laundry, access the law library, and attend church services were essential components of his rehabilitation. Bailey asked to be paroled to Clitheroe or for substance abuse treatment to be made a condition of his mandatory release.

The parole board denied reconsideration. The parole board administrator wrote to Bailey that "the program, housing and dining units are all on the ground floor" of Wildwood, and "[t]here is nothing prohibiting you from participating in that program and the

Parole Board wants you to apply to and participate in the program if accepted."

Bailey applied to enter the Wildwood program, and on September 13 he had a telephone interview as part of the application process. Bailey was informed that the program required a thirty-day "blackout" period for new participants. Bailey later alleged he was told that inmates could not receive any mail during the blackout period and that access to the law library would be based on merit, and claimed that he had objected to those restrictions during the interview.

The day after Bailey's interview, Wildwood declined to accept Bailey into its program. Wildwood's e-mail to Bailey's parole officer stated that Bailey had "made it clear ... that he did not want to come to the [Wildwood] program and he 'would not' participate in a 30–day blackout period." The e-mail also noted "it does not appear that treatment at [Wildwood] is [Bailey's] number one priority. He even stated ... he 'was be[ing] coerced and forced' into the program. This is a voluntary program and we would not force someone to stay here if they did not want to be here."

On September 22 Bailey filed a grievance regarding Wildwood's denial of his application to enter the program, asserting his understanding that Wildwood's blackout period involved "no receipt of any incoming mail of [any sort]" and limited "access to the law library ... based upon merit." Arguing that he needed to receive mail and have access to the law library, Bailey maintained that those restrictions, as well as a statement by the interviewer that "they didn't want people in the program that had [ongoing] legal matters that might distract [from] their programming objectives," violated his constitutional right to access the courts. He also repeated his allegation that Wildwood did not comply with ADA requirements.

DOC responded on September 30: "Law Library access and legal call access are both allowed.... There is no restriction specific to the 'black-out' period. A digital Law Library terminal is in the Therapeutic Community unit. Appeal denied because all access is already available." Bailey appealed to

DOC's Commissioner, who responded on November 14 reiterating that "legal mail is not restricted during the blackout period" and that "law library access and legal call access are unrestricted during this period." The letter concluded that Bailey's grievance issues "have been addressed and clarified so that the restrictions initially described do not exist" and that "[t]herefore, [Bailey's grievance for] relief . . . is granted."

In January 2006 Bailey sent a letter to the executive director of the parole board, explaining his disability and referencing a 1993 report stating that Wildwood could not accommodate mobility-impaired prisoners. Bailey requested placement at Clitheroe to receive his substance abuse treatment. No response from the parole board is evident from the record.

In June 2006, after a delay requested by Bailey's attorney, the parole board held the hearing continued from the previous June. The parole board began by stating it had ordered Bailey to "*do* substance abuse treatment via the [program] at Wildwood," then added "[t]he board . . . instructed prisoner Bailey to *apply* for substance abuse treatment, [and to] make every effort to comply with his court order." (Emphasis added.)

Bailey described his attempts to secure substance abuse treatment dating back to 2002. When the parole board accused him of "treatment shopping," Bailey responded that was an "unfair assessment" made without looking at all the treatment avenues he had pursued. Bailey again raised his concern about Wildwood's ADA compliance. The parole board responded by saying,

> [T]he board recognizes that ADA is the law of the land. [But] we had no idea what is acceptable or not with ADA. . . . We do know that we've been told that the program at Wildwood is accessible to disabled people. The hearing must be heard on parole matters only and we are not here (indiscernible) . . . and you have full right to take them to a court of law in the state of Alaska—but we are not here to take the parole board's time today to discuss [that].

On July 5 the parole board revoked Bailey's parole, finding that he had "failed to actively participate and successfully complete substance abuse treatment offered to him while incarcerated." The parole board further denied Bailey any consideration for parole through the remainder of his sentence.

Bailey appealed to the superior court in January 2007. In his opening brief he argued that: (1) he was not given constructive notice that failure to *be accepted* into the Wildwood program would be sufficient grounds for revoking his parole; (2) he complied with the parole board's June 2005 order to *apply* to a treatment program; and (3) because Wildwood denied his application, no substance abuse treatment was ever "offered" to him within the meaning of the original judgment. In his reply brief, Bailey clarified that his constructive notice argument was that of a due process violation, his objections to the Wildwood program were in defense of his rights under the ADA and his constitutional right to access the courts, and the parole board's failure to give proper consideration to Bailey's concerns violated those rights.

In April 2008 the superior court concluded that Bailey "did not demonstrate a good faith effort to comply with the court order," and that the parole board's decision to revoke Bailey's parole was a reasonable exercise of the board's authority supported by "more than substantial evidence." The superior court did not directly address Bailey's constitutional or ADA claims. Bailey appeals from that decision.

In May 2008 Bailey prevailed in a separate post-conviction relief action, establishing that he should have been ordered to serve his sentences concurrently rather than consecutively. In light of that decision, Bailey asserts on appeal to us that he was ineligible for the Wildwood program at the time of his parole board hearing because he did not have enough time remaining on his sentence to complete the program, and that the parole board's decision must therefore be reversed as a matter of law.

## III. STANDARD OF REVIEW

We independently review the record from a parole board decision after the superior court, functioning as an intermedi-

ate appellate court, has considered a request for relief.[3] We evaluate whether factual determinations of the parole board are supported by substantial evidence.[4] When the parole board exercises its discretionary authority we review its action for reasonableness "to insure that its determinations are supported by evidence in the record as a whole and there is no abuse of discretion."[5] But claims that conditions of parole violate constitutional rights are questions of law to which we apply our independent judgment.[6] As with all questions of law, we will adopt the rule that is most persuasive in light of precedent, reason, and policy.[7]

## IV. DISCUSSION

■ Bailey argues in part that revocation of his parole violated his rights under the United States and Alaska Constitutions. According to Bailey his "due process rights include sufficient constructive notice that his failure to be enrolled in the Wildwood ... program would result in the immediate revocation of his mandatory parole...." He does not deny he received notice that he must apply to a residential treatment program. He contends that "[t]here was no indication by the Board at the hearing that if [Bailey] were not accepted into the program, he would automatically lo[s]e his right to a parole" and that the Board did not "order [him] to reapply if he was denied entrance to the program." Because the constitutionality of a parole condition is "a threshold matter,"[8] we consider this argument first.

■ Even though parolees enjoy fewer rights than the general population, "under both the United States and Alaska Constitutions, a parolee may not be deprived of his limited liberty without due process of law."[9] Due process includes reasonable notice,[10] which in this context requires notice of what conditions an individual must satisfy to avoid revocation of his parole.

We find the reasoning of the court of appeals in *Hamrick v. State*[11] particularly informative here. In that case a probation condition required Hamrick "to successfully complete an approved sexual offender treatment program."[12] Hamrick's probation was revoked after DOC misplaced his first application for a treatment program and he delayed too long in submitting another.[13] The court of appeals held that DOC has "the duty to make it clear to the prisoner that ... he will be in violation of his conditions of probation" if he fails to fulfill certain expectations.[14] It concluded Hamrick was not "fully

3. See *Covington v. State*, 938 P.2d 1085, 1088 (Alaska App.1997) (independently reviewing record of parole board decision after superior court denied request for relief).

4. *Id.* at 1090.

5. *Id.* at 1090–91.

6. *Id.* at 1089 (citing *Dye v. State*, 650 P.2d 418, 420 n. 5 (Alaska App.1982)).

7. *Lewis v. State*, 139 P.3d 1266, 1269 (Alaska 2006).

8. *Covington*, 938 P.2d at 1089.

9. *Paul v. State*, 560 P.2d 754, 756 (Alaska 1977) (citing *Wortham v. State*, 519 P.2d 797, 799 (Alaska 1974)).

10. *E.g., Smith v. State*, 872 P.2d 1218, 1224 (Alaska 1994); *see also United States v. Dane*, 570 F.2d 840, 843 (9th Cir.1977) ("It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty." (citing *Bouie v. City of*

Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964))).

11. 64 P.3d 175 (Alaska App.2003) (reversing order revoking probation because prisoner lacked notice). We acknowledge that there are "prominent and significant" differences between probation and parole. *State v. Staael*, 807 P.2d 513, 517 n. 5 (Alaska App.1991). Nevertheless, we look to the reasoning in *Hamrick* because the due process issue presented here is treated identically in the parole and probation contexts. *See Staael*, 807 P.2d at 517 n. 5 ("[D]ue process requirements for revocation of probation and parole are constitutionally indistinguishable." (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973))); *Paul*, 560 P.2d at 756 (echoing the United States Supreme Court's observation that there is no perceptible "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation" (quoting *Gagnon*, 411 U.S. at 782, 93 S.Ct. 1756)).

12. *Hamrick*, 64 P.3d at 176.

13. *Id.* at 176–77.

14. *Id.* at 178.

aware" that his conduct violated a condition and would lead to revocation of his probation, and so it could not have been a willful violation.[15] Because Hamrick lacked notice, the court of appeals reversed the superior court's order revoking his probation.[16]

Here we conclude Bailey lacked sufficient notice that failure to reapply to and successfully enroll in the Wildwood program after he prevailed in his grievance would result in revocation of his parole. At the close of its meeting the parole board instructed Bailey to *"make an application* to the . . . program." (Emphasis added.) The Board then told Bailey: "If you're not accepted, we will review that or if you are accepted, we'll review this case again in December." The Notice of Board Action and the Order Revoking Parole, issued the same day as the hearing, confirmed the parole board's mandate that Bailey *"apply* for substance abuse treatment while incarcerated." (Emphasis added.) In compliance with the unambiguous language of the parole board's order Bailey applied to the Wildwood program. His application was rejected. Yet the parole board later revoked his parole for "failure to *participate in* substance abuse treatment while incarcerated." (Emphasis added.)

The parole board's instructions provided notice that Bailey must apply to a residential treatment program or risk parole revocation. But the parole board expressly allowed for the possibility that Bailey's application would be denied, and the parole board did not warn of any possible consequences—including revocation of parole—if Bailey's application was denied and he did not reapply. Although the parole board's July 2005 letter to Bailey stated "it is the Board's expectation that you will be actively participating in an institutional substance abuse program," we agree with Bailey that "[d]espite the Board's expectations, there [was] no admonition that denial

of acceptance into a program would result in parole revocation."

DOC nevertheless argues Bailey had constructive notice in light of the Notice of Court–Ordered Treatment, the Parole Violation Report, and the parole board's order that he apply for treatment. Citing *Williams v. State*[17] and *Alexander v. State*,[18] DOC maintains that "Bailey's parole . . . was revoked because he failed to re-apply to Wildwood after he was informed that he would have legal mail access and access to the law library." We disagree.

The Notice of Court–Ordered Treatment warned that "[f]ailure to participate in or comply with the treatment plan of a court-ordered rehabilitation program, if the program is made available to [Bailey]" would lead to a petition to revoke his parole. The Parole Violation Report—filed by an officer who later requested to withdraw his petition to revoke Bailey's parole—charged that "Bailey failed to actively participate and successfully complete substance abuse treatment offered to him while incarcerated." Yet both the notice and the report are premised upon the availability of a treatment program. We agree with Bailey that "[a] program cannot be said to be offered, and/or made available if one is denied acceptance into the program," at least if the denial is not willfully procured by the prisoner.

Here no program was offered or made available to Bailey. Bailey signed a Prisoner Notice of Court–Ordered Treatment in October 2002. Soon after transferring to Spring Creek, Bailey inquired about his court-ordered treatment but was told DOC personnel were "not interested in reviewing [Bailey] at this time." Bailey applied for treatment in Arizona but was placed on a waiting list. Bailey unsuccessfully attempted to enroll in Clitheroe in 2004 and 2005. Bailey complied with the parole board's June 2005 order to apply to a residential treatment program, but

---

**15.** *Id.* at 178–79.

**16.** *Id.*

**17.** 924 P.2d 104 (Alaska App.1996) (rejecting challenges to requirement that defendant "participate in and complete any sex offender treatment program offered in prison").

**18.** 38 P.3d 543, 545 (Alaska App.2001) (holding that order to "take advantage of" available sex offender treatment programs conferred adequate notice that parolee must "make meaningful efforts to participate in the treatment program").

his application was rejected after he raised concerns about the facilities. Bailey's concerns were addressed only after he filed a grievance that was resolved in his favor. In light of these efforts, as well as Pianko's testimony regarding Bailey's willingness to seek treatment, we reject DOC's argument that the Notice of Court–Ordered Treatment and Parole Violation Report were sufficient to provide notice.

We also disagree with DOC's contention that Bailey was on notice he had to take additional affirmative steps to enroll in the Wildwood program once he prevailed with his grievance. It would have been reasonable for Bailey to believe it was incumbent upon DOC personnel in charge of the Wildwood program to reconsider his application after his successful grievance. There is no evidence from which to find that Bailey, in failing to reapply after his successful grievance, was or should have been fully aware he was risking parole revocation.[19]

We therefore conclude Bailey lacked adequate notice that failure to reapply to, and be enrolled in, the Wildwood program after his successful grievance would lead to revocation of his parole. The revocation therefore violated Bailey's constitutionally guaranteed right to due process.[20]

## V. CONCLUSION

We REVERSE the decision of the superior court and REMAND for proceedings consistent with this opinion.

CARPENETI, Chief Justice, and EASTAUGH, Justice, not participating.

---

**19.** *See Hamrick,* 64 P.3d at 178–79 (reversing revocation of probation because the record did not establish that the prisoner was fully aware he needed to promptly reapply to a treatment program).

**20.** The parties' briefs present other constitutional and statutory claims, including Bailey's argument that the parole board's decision should be reversed as a matter of law because of the recalculation of time he has left to serve. We do not reach these issues because we conclude it was a violation of due process to revoke Bailey's parole.