**Travis R. McRAE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5606.**

Court of Appeals of Alaska.

Jan. 12, 1996.

Allan R. Thielen, Assistant Public Defender, Kodiak, Herman G. Walker, Assistant Public Defender, and John B. Salemi, Public Defender, Anchorage, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

Travis R. McRae appeals the order of the superior court revoking his probation from a 1991 felony conviction. We affirm.

In 1990, McRae was prosecuted for third-degree misconduct involving a controlled substance. The State peremptorily challenged the resident superior court judge in Kodiak.

An Anchorage judge was assigned to the case but, a few days later, McRae challenged this second judge. Ultimately, Superior Court Judge Milton M. Souter (another Anchorage judge) was assigned to McRae's case. In January 1991, following McRae's plea of no contest, Judge Souter traveled to Kodiak to conduct McRae's sentencing. Judge Souter sentenced McRae to 4 years' imprisonment with all but 18 months suspended.

McRae served his term of imprisonment and was released on probation. On June 30, 1994, the Department of Corrections petitioned the superior court to revoke McRae's probation. The petition alleged that McRae had violated various game laws, that McRae had possessed (and used) a firearm (in commission of the hunting violations), that McRae had consumed alcoholic beverages, and that McRae had changed both his employment and his residence without obtaining his probation officer's permission. McRae denied these allegations. On August 9, 1994, Presiding Superior Court Judge Karl S. Johnstone scheduled a hearing on the revocation petition in front of Judge Souter.[1]

When the parties assembled in the Kodiak courthouse on August 10th for the hearing, Superior Court Judge Donald D. Hopwood was present to preside over the hearing. McRae's attorney objected to Judge Hopwood's participation: he declared that he had expected Judge Souter to preside, since Judge Souter had been the sentencing judge and since Judge Souter was the judge named in the calendaring order. Confronted with McRae's objection, Judge Hopwood recessed the hearing to consult Judge Souter and Judge Johnstone.

When court reconvened, Judge Johnstone appeared telephonically and announced that Judge Hopwood would hear only the adjudicative (fact-finding) phase of the revocation hearing; if McRae were found to have violated the conditions of his probation, then Judge Souter would preside over the dispositive (sentencing) phase of the proceedings.

After Judge Johnstone announced this ruling, McRae declared that he wished to peremptorily challenge Judge Hopwood. Judge Johnstone denied the challenge because McRae had already exercised a peremptory challenge earlier in the case (in 1990).

A few days later, McRae sought reconsideration of Judge Johnstone's ruling. He asked that Judge Souter hear both the adjudicative and dispositive phases of the probation revocation hearing. In the alternative, if a judge other than Judge Souter were to hear the adjudicative phase of the proceeding, McRae asked to be allowed to exercise a peremptory challenge against this new judge. Judge Johnstone denied McRae's motion.

Judge Hopwood conducted the adjudicative phase of the revocation hearing on August 10 and 11 and September 12 and 23, 1994. At the close of the hearing, Judge Hopwood found that the State had proved all but two of the allegations contained in the petition. Accordingly, a disposition hearing was scheduled in front of Judge Souter. On November 29, 1994, at the close of this hearing, Judge Souter revoked McRae's probation and sentenced him to serve 6 months of the imprisonment that he had originally suspended. He also extended McRae's probation by one year.

McRae now appeals the revocation of his probation. McRae contends that, because Judge Souter was the judge who originally sentenced him, Judge Souter should have conducted both the adjudicative and the dispositive phases of the revocation hearing. McRae asserts that Judge Johnstone acted unlawfully when he assigned Judge Hopwood to conduct the adjudicative phase of the revocation hearing. Alternatively, McRae argues that if Judge Johnstone acted properly when he assigned the adjudicative phase of the proceedings to a judge other than Judge Souter, then McRae should have been entitled to exercise a peremptory challenge against this new judge.

---

**1.** The calendaring order states that the hearing was to be held "before Judge Milton M. Souter in Courtroom A". Given the facts that Judge Souter resides in Anchorage, that Judge Johnstone's order set the hearing for the very next day, and that Judge Souter's assigned courtroom in the Anchorage courthouse is Courtroom A, it appears that Judge Johnstone anticipated that the probation revocation hearing would be held in Anchorage.

McRae relies on *Kvasnikoff v. State*, 535 P.2d 464 (Alaska 1975), for the proposition that the judge who sentenced a defendant should hear any probation revocation proceedings. In *Kvasnikoff*, the supreme court said:

> When a judge has entered an order placing a defendant on probation, any subsequent hearing held to determine whether probation should be revoked is a supplemental proceeding.... We believe that justice is better served by preserving the jurisdiction of the original trial judge over the sentencing process. The goals of sentencing are best met when a judge who is familiar with a case is permitted to determine whether probation should be revoked and the sentence should be imposed.

*Kvasnikoff*, 535 P.2d at 466. Based on *Kvasnikoff*, this court adopted the rule that a defendant's original sentencing judge should ordinarily preside over probation revocation proceedings unless there is good reason to assign another judge. *Trenton v. State*, 789 P.2d 178 (Alaska App.1990).

While *Kvasnikoff* and *Trenton* appear at first blush to support McRae's insistence on having Judge Souter conduct the entire probation revocation proceedings, McRae's case raises an issue that was not confronted in *Kvasnikoff* and *Trenton*: whether a different judge can preside over the adjudicative phase of the revocation proceedings so long as the original sentencing judge conducts the dispositive phase.

Probation revocation proceedings consist of two distinct phases. The proceedings begin with an adjudicative· (fact-finding) phase in which the parties litigate whether the defendant violated the terms of probation. If the court finds that the defendant violated the terms of probation, the proceedings then move to a dispositive (sentencing) phase in which the court decides (a) whether these violations require revocation of the defendant's probation, and, if so, (b) what adjustment should be made to the defendant's sentence (generally, imposition of previously suspended jail time, extension of the defendant's period of probation, or both). *Holton v. State*, 602 P.2d 1228, 1238 (Alaska 1979); *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973).

In *Kvasnikoff*, the supreme court concluded that "justice is better served" by having the original sentencing judge preside over any probation revocation proceedings. But the court reached this conclusion because it believed that such a rule would best serve the goals of sentencing:

> The goals of sentencing are best met when a judge who is familiar with a case is permitted to determine whether probation should be revoked and the [previously suspended] sentence should be imposed.

*Kvasnikoff*, 535 P.2d at 466.

The two determinations mentioned by the supreme court—whether to revoke the defendant's probation, and what sentence to impose if probation is revoked—are the two determinations made at the dispositive phase of the revocation proceedings. Like the original decision to suspend a term of imprisonment and place a defendant on probation, these two revocation decisions are entrusted to a judge's sentencing discretion. Alaska law recognizes that different judges may legitimately reach different sentencing conclusions based on the same set of facts. *See Ephamka v. State*, 878 P.2d 647, 652 (Alaska App.1994).[2] Because of this, the sentencing goals of reasonable uniformity and predictability are enhanced by having the original judge exercise the required sentencing discretion at any probation revocation proceedings.

But this policy of continuity is attenuated at the adjudicative phase of the revocation proceeding. At the adjudicative phase of the proceeding, the issues are confined to questions of historical fact: what were the defendant's conditions of probation, and did the defendant violate them? In our legal system, the task of fact-finding is often separated from the task of deciding what legal outcome is appropriate under the facts, and

---

**2.** "Reasonable people can differ regarding the proper sentence for a particular defendant; the supreme court's adoption of the 'clearly mistaken' standard of review in sentence appeals rests on the recognition that there is a 'range of reasonable sentences' for any given defendant. *State v. Wentz*, 805 P.2d 962, 965 (Alaska 1991)."

these tasks are frequently assigned to different judicial officers. For example, the appellate courts often remand factual issues to the trial courts, and the trial courts often appoint masters to make factual determinations necessary to the courts' ultimate legal rulings. Thus, the policy of having the same judicial officer hear all aspects of a proceeding applies less strongly when a proceeding is divided into adjudicative and dispositive halves. Accordingly, when the issue is whether another judge should be assigned to hear the fact-finding portion of a probation revocation proceeding, the "good cause" required for this judicial re-assignment need not be as compelling as it would need to be if all aspects of the proceeding (both adjudicative and dispositive) were to be transferred to a new judge.

We recognize that there may be cases in which a sentencing judge crafts unusual conditions of probation to accomplish specific sentencing goals for a particular offender. In such cases, if the parties later disagree on the meaning of the defendant's conditions of probation, the input of the original sentencing judge might be valuable, thus providing more reason to favor having the original judge conduct the adjudicative phase of the revocation proceeding. However, the conditions of probation at issue in McRae's case were standard conditions: no further violations of the law, no drinking, no possession of firearms, and no change of residence or employment without notifying his probation officer. There was no dispute concerning the meaning of these conditions—only whether McRae had violated them.

McRae argues that Judge Souter, to properly exercise his sentencing discretion at the dispositive phase of the proceeding, might wish or need to know more about the facts than can be gleaned from reading Judge Hopwood's findings. McRae notes that sentencing decisions are often based, not just on the bare plea or verdict, but on a much fuller evidentiary record that reveals the context of the defendant's behavior and sheds light on whether the defendant's violation of the law is typical, aggravated, or mitigated. We do not disagree with McRae's assertion. But if McRae believed that Judge Souter needed to

be apprised of the full evidentiary record developed at the adjudicative hearing in order to understand Judge Hopwood's findings of fact, McRae was free to bring that record to Judge Souter's attention. *Compare* Alaska Criminal Rule 25(b). Likewise, if McRae had additional information to offer in explanation or mitigation of his violations of probation (information not presented at the adjudicative phase of the hearing), McRae was free to offer this information at the disposition hearing.

Under the facts of McRae's case, we hold that Judge Johnstone did not abuse his discretion when he assigned the adjudicative phase of McRae's probation revocation proceedings to Judge Hopwood, the resident superior court judge in Kodiak. First, Judge Souter resided in Anchorage; presumably, he would have had to cancel his normal court calendar to travel to Kodiak for the adjudication hearing. Second, McRae was charged with violating standard conditions of probation. McRae has not suggested that Judge Souter, as the original sentencing judge, had special insight into the meaning of the probation conditions. Indeed, the meaning of these conditions was not disputed. And third, even though McRae argues that it is generally better for the same judge to conduct both phases of the revocation hearing, McRae has not shown or even suggested that he was prejudiced by having the two phases conducted by different judges. In particular, McRae has not shown that Judge Johnstone's decision prejudiced his ability to defend against the allegations in the State's petition or prejudiced his ability to present relevant sentencing information to Judge Souter at the disposition hearing. We therefore uphold the assignment of Judge Hopwood to conduct the adjudicative phase of the revocation proceedings.

This brings us to McRae's second contention: that if Judge Johnstone could properly assign a different judge to conduct the adjudicative phase of the revocation proceedings, then McRae was entitled to exercise a peremptory challenge against this new judge. This contention is answered by *Kvasnikoff*, where the supreme court declared that "any subsequent hearing held to determine wheth-

er probation should be revoked is a supplemental proceeding" to the original criminal prosecution. 535 P.2d at 466. That is, a probation revocation hearing is a "continuation of the original [criminal] proceedings". *Id.*

■ Probation revocation proceedings are initiated when the State alleges that the defendant has failed to live up to the terms of the judgement. To the extent that the terms of probation might be likened to a contract between the court and the defendant, the purpose of the revocation proceedings is to determine whether the defendant is in breach and whether the breach is material. As the supreme court stated in *Kvasnikoff,* justice is best served if the same judge who originally sentenced the defendant makes the sentencing decision at any subsequent probation revocation proceedings. To this end, probation revocation proceedings are viewed as the "same case" for peremptory challenge purposes.

■ In any criminal case, both the government and the defendant have the right to peremptorily challenge one judge. AS 22.20.022(d); Alaska Criminal Rule 25(d)(1). McRae exercised this right of peremptory challenge in 1990, when he challenged the second judge assigned to his case. Thus, when Judge Hopwood was assigned to hear the adjudicative phase of the probation revocation hearing, McRae had no peremptory challenge left to exercise against Judge Hopwood. For this reason, we uphold Judge Johnstone's decision to deny the peremptory challenge McRae filed against Judge Hopwood.

The judgement of the superior court is AFFIRMED.