**Floyd L. HAMRICK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8041.**

Court of Appeals of Alaska.

Feb. 14, 2003.

**15.** *See Neal,* 628 P.2d at 22.      **16.** *Neal,* 628 P.2d at 22.

Leslie Hiebert, Assistant Public Advocate, Brant McGee, Public Advocate, Office of Public Advocacy, Anchorage, for Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Floyd L. Hamrick was convicted of sexual abuse of a minor in the second degree. Superior Court Judge Larry D. Card sentenced Hamrick to serve 10 years with 4 years suspended. One of Hamrick's special conditions of probation required him "[w]hile incarcerated to successfully complete an approved sexual offender treatment program as directed by the Department of Corrections." After he was imprisoned, Hamrick filed an application to participate in a sexual offender treatment program. But the department misplaced this application and Hamrick's probation officer told him to submit a second application. Hamrick delayed several months before filing this second application, and, by the time he submitted it, it was too late for him to be admitted to the treatment program. As a result, Judge Card revoked Hamrick's probation and imposed an additional 9 months of imprisonment. Hamrick appeals this revocation. We reverse the revocation because we conclude that the record does not establish that the Department of Corrections made it sufficiently clear to Hamrick that his failure to file a second application in a more timely manner would result in the revocation of his probation.

Judge Card's special condition of probation required Hamrick to "[w]hile incarcerated successfully complete an approved sexual offender treatment program as directed by the Department of Corrections." In November 1998, almost immediately upon incarceration at the Wildwood Correctional Center (WCC), Hamrick met with probation officer Michael McBride.

McBride explained the treatment options to Hamrick as part of his general orientation and discussed the options for treatment. He informed Hamrick that failure to obtain treatment could result in probation revocation. He gave him a form entitled "Prisoner Notice of Court–Ordered Treatment," which included a space to indicate whether or not Hamrick would be willing to participate in court-ordered treatment. Hamrick marked that he would be willing and indicated he would prefer to begin treatment after January 2000. The form contained the following warning:

> Failure to participate in or comply with the treatment plan of a court-ordered rehabilitation program, if the program is made available to you, will result in your institutional probation officer (or designee) filing a petition to revoke any probation or mandatory parole included in your sentence (including imposition of any suspended sentence). . . .
>
> . . . .
>
> WARNING: Resources within the Department of Corrections are subject to change. If you refuse to enter a court-ordered treatment program when notified that it is available, you may not be given another opportunity. Any refusal to enter available court-ordered treatment, as well as committing disciplinary infractions or institutional behavior that cause you to be ineligible, subject you to the noncompliance procedures outlined above. You are strongly encouraged to participate in the court-ordered rehabilitation program at the earliest time it is made available to you.

Hamrick completed the application, and Hamrick and McBride signed the application. The application stated that the probation officer had ensured that the prisoner read and understood the consequences of noncompliance as explained in the warning that we have set out above. The application was faxed to the treatment program at Meadow Creek Correctional Center. The usual policy at Meadow Creek is to respond within two months to the application. But no one ever responded to Hamrick's first application.

The Department of Corrections later transferred Hamrick to an Arizona facility. His probation officer in Arizona, Judy Gette, first contacted him in December 2000. She noticed that Hamrick had a special condition of probation to complete a sex offender treatment program while in custody and discussed this with Hamrick. Hamrick signed a "Prisoner Notice of Court–Ordered Treatment" form, stated that he was willing to participate in sex offender treatment, and told Gette that he had an application pending. Gette checked and was unable to locate Hamrick's first application. She gave him a second application to fill out. Hamrick stated that "[h]e was a little bit hesitant about applying." In response, Gette testified that she tried to motivate him and give him some reasons why it would be "a good choice for him to fill out the application and get it submitted." Gette stated that, as part of her instructions, she would have told Hamrick that if he did not comply with the application process, he could face court action. She told "him that the consequences would not be pleasant if he didn't comply." Gette told Hamrick that he was under a time constraint for turning his application in because his release date was 29 months away and they were getting close to the deadline to apply.

Hamrick delayed approximately nine months and finally submitted the second application on September 1, 2000. Gette testified that during this nine-month period she did not recall making any attempt to follow up to determine if Hamrick was going to submit an application. The Meadow Creek Correctional Center rejected Hamrick's application on November 13, 2000, because Hamrick had less than 21 months left to

serve on his sentence. Under the conditions of the program, Hamrick was therefore ineligible for participation in the sex offender treatment program because it did not leave him with enough time to enter and complete the program. The application was denied with the suggestion that Hamrick should complete the Lemon Creek pretreatment program in order to prepare him for release. However, the Department of Corrections determined that the Lemon Creek program did not satisfy the court-ordered treatment program. Therefore, because Hamrick had been rejected from the Meadow Creek program, the Department of Corrections filed a petition to revoke Hamrick's probation.

Following a hearing, Judge Card concluded that Hamrick had violated his probation. Judge Card found that Hamrick had violated his probation by his tardy submission of the second application. Judge Card imposed 9 months of Hamrick's previously suspended sentence in order to give Hamrick an opportunity to complete the Meadow Creek program or, if again rejected by the Meadow Creek program because there was insufficient time to complete the program, to allow him to complete the program at Lemon Creek.

■ Hamrick raises two arguments in support of his contention that the State did not present evidence justifying revocation of his probation. First, Hamrick points out that the special condition of probation required him to successfully complete an approved sexual offender treatment program while incarcerated as directed by the Department of Corrections. He argues that because the Department of Corrections never offered him a sexual offender treatment program and he never entered the program, he did not violate this condition of probation. He also argues that, if we determine that the Department of Corrections could require him to participate in the application process, then the Department did not make it sufficiently clear that he would violate his condition of probation if he failed to file a second application by a particular time.

We agree with the State that the Department of Corrections had the authority, reviewable by the court, to determine what

Hamrick had to do to successfully complete the sexual offender treatment program while incarcerated. In *Williams v. State*[1] we stated that where a defendant is ordered to comply with a treatment program, the defendant must do whatever the treatment plan requires.[2] Furthermore, Hamrick's probation condition itself makes it clear that Hamrick is to complete an approved sexual offender treatment program "as directed by the Department of Corrections." It seems clear that the Department of Corrections must have considerable authority to carry out court-ordered conditions of probation involving prisoners committed to its care. We therefore conclude that the Department of Corrections had the authority to require Hamrick to participate in the application process and to establish reasonable rules governing the application process.

▮ But where the department exercises its authority to make rules governing the application process for a court-ordered sexual offender treatment program, in order to justify revoking a prisoner's probation for failing to comply with the application process, the department has the duty to make it clear to the prisoner that his court-ordered probation requires him to comply with the specific rules of the application process and that he will be in violation of his conditions of probation if he violates those rules. We do not believe that the Department of Corrections gave Hamrick sufficient notice that his actions would violate his condition of probation.

The probation condition itself did not give Hamrick any notice that he was required to do anything other than successfully complete whatever the Department directed him to participate in. When Hamrick was asked to fill out an application and apply for a program, he did so. He indicated that he would participate in treatment. The form he filled out warned him that if he refused to participate in a treatment program or comply with a treatment program that was offered to him, his probation officer would file a petition to revoke. He was warned that disciplinary infractions could cause him to be ineligible for treatment and could result in revocation.

He was strongly encouraged to participate in a court-ordered rehabilitation at the earliest time. But the application form itself told him that the act of applying did not guarantee his admission into a program and that he would be notified if he was accepted. Hamrick was never directly ordered to participate in a particular program, and therefore he never violated the probation condition that ordered him to participate in any program he was ordered to participate in by the Department of Corrections.

In Arizona, Hamrick again signed a statement that he was willing to participate in sex offender treatment. When Probation Officer Gette was unable to find his first application, she asked him to fill out another application. She did tell Hamrick that if he did not comply with the application process he could face court action and the consequences would not be pleasant. She also testified that she told him that he was getting close to a deadline and needed to apply soon. But when Hamrick delayed in filing the second application, she indicated that she did not remember making any effort to follow up to see if Hamrick was going to reapply.

▮ Admittedly Hamrick was negligent in failing to file a timely second application. But in order to find a willful violation, we believe that the department needed to establish that Hamrick was fully aware that his behavior was in violation of his conditions of probation and would result in his revocation. We do not believe that the record is sufficiently clear to allow us to uphold Hamrick's revocation. Hamrick was never ordered to fill out the application or ordered to fill it out by a particular time. Hamrick never refused sex offender treatment. On at least three different occasions, he certified that he would participate. The Department, as part of the treatment plan, could require Hamrick to fill out an application and to submit it by a certain time. But in order to revoke Hamrick's probation for failing to file a timely application, we believe that the Department of Corrections had the duty to make Hamrick's duties clear to him and to make sure

---

**1.** 924 P.2d 104 (Alaska App.1996).

**2.** *Id.* at 107.

that Hamrick understood that his failure to comply would violate his probation. We do not believe that this was done in this case. We accordingly reverse the superior court's order revoking Hamrick's probation.

REVERSED.

STEWART, Judge, dissenting.

Alaska Statute 12.55.015(a)(10) authorizes a court to "order the defendant, while incarcerated, to participate in or comply with the treatment plan of a rehabilitative program that is related to the defendant's offense or to the defendant's rehabilitation if the program is made available to the defendant by the Department of Corrections." As reflected in the judgment in Hamrick's case, Judge Card ordered Hamrick, while incarcerated, to "successfully complete an approved sexual offender treatment program as directed by the Department of Corrections." As the court explained above, the State filed a petition to revoke Hamrick's probation because Hamrick did not submit his application to enter treatment until there was insufficient time remaining on his sentence to complete the treatment program.

My colleagues conclude that the department "had the duty to make Hamrick's duties clear to him and to make sure that Hamrick understood that his failure to [submit a timely application] would violate his probation." They also reason that Hamrick's probation condition "did not give Hamrick any notice that he was required to do anything other than successfully complete the program."

I disagree with both of those conclusions. First, I conclude that the probation condition Judge Card imposed that requires Hamrick to complete a sex offender treatment program notifies Hamrick that he is obliged to enroll in a treatment program. In *Alexander v. State*,[1] we reviewed a case where the superior court imposed a probation condition that required the defendant to "take advantage of sex offender ... programs that are available" while in custody.[2] The superior court ruled that "take advantage of" meant that Alexander was required to "enroll in and fully participate" in the treatment program.[3] We determined that this probation condition—that Alexander "take advantage of" treatment—gave Alexander sufficient notice that he had to "make meaningful efforts to participate in the treatment program."[4]

The condition imposed by Judge Card is clear; it obliges Hamrick to complete the treatment program. I conclude that this condition informed Hamrick that he had to enroll in the program (and complete the forms the Department of Corrections provided to him on a timely basis).

Because the probation condition itself gave Hamrick reasonable notice of his obligation to enroll, I disagree with the my colleagues' conclusion that the Department had an additional duty to make sure that Hamrick understood his probation might be revoked if he did not complete the application. Even so, Probation Officer Gette testified that she took the application to Hamrick in his cell and tried to motivate him to apply, but Hamrick was hesitant about applying. She urged him to submit the application but Hamrick said he was not sure what he wanted to do.

Probation conditions are analogous to contracts between the court and the defendant; by accepting a probation condition, the defendant commits to doing something or refraining from certain behavior.[5] Here, Hamrick agreed to complete sex offender treatment while he was in custody. My colleagues have ruled that Hamrick was negligent by waiting to submit his application until it was too late to complete the program, but that the State needed to prove Hamrick was "fully aware" that a late application would result in a probation revocation.

I do not agree that the State must meet that standard. I believe the State was required to prove a material breach of the probation condition. Hamrick was obliged to

1.  38 P.3d 543 (Alaska App.2001).

2.  *Id.* at 544.

3.  *Id.* at 545.

4.  *Id.*

5.  *See McRae v. State*, 909 P.2d 1079, 1083 (Alaska App.1996).

make meaningful efforts to complete sex offender treatment while incarcerated. The evidence showed that Hamrick submitted the application months after it was provided and too late to complete the treatment program. Judge Card justifiably found that Hamrick's late application resulted in a material breach of his promise to complete sex offender treatment while in custody.

But even if the State had to prove that Hamrick was "fully aware" that his failure to file a timely application would violate his probation condition, this standard was clearly met: Judge Card heard testimony that Probation Officer Gette had explained to Hamrick that he could face court action for failing to comply with the application process, but Hamrick was hesitant to even apply for treatment and did not know what he wanted to do. Furthermore, on the evidence before him, Judge Card could reasonably find that Hamrick understood that he had to submit an application to enter treatment. There was no evidence submitted to the contrary nor any evidence that Hamrick had any different understanding. On this record, I conclude that Judge Card properly found that Hamrick violated his probation condition.