NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JIMMIE D. LOCKHART, SR., | ) | |
| | ) | Supreme Court No. S-14045 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-05650 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MUNICIPALITY OF ANCHORAGE, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1447 – December 19, 2012 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Jimmie D. Lockhart, Sr., pro se, Anchorage, Appellant. Pamela D. Weiss, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices, and Eastaugh, Senior Justice.**

## I.    INTRODUCTION

An Anchorage homeowner failed to pay his annual real property taxes. The Municipality of Anchorage published a foreclosure list in a newspaper and notified the homeowner by mail that the Municipality would foreclose on his home unless he paid

---

\*        Entered under Appellate Rule 214.

\*\*       Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

his taxes. The homeowner, proceeding pro se, filed a motion in superior court to remove his property from the foreclosure list and raised a number of unsupported objections to the Municipality's taxation authority. The superior court denied the homeowner's motion and entered a judgment and decree of foreclosure for the homeowner's property. The homeowner appeals pro se, again asserting a variety of unsupported contentions. Because the homeowner's contentions on appeal lack merit and record support, we affirm the superior court's judgment and decree of foreclosure.

## II. FACTS AND PROCEEDINGS

Jimmie D. Lockhart, Sr. owned a home in Anchorage. As of February 2010, the Municipality of Anchorage calculated that Lockhart owed the Municipality $10,576.14 in delinquent real property taxes, interest, and penalties. In March 2010 the Municipality petitioned the superior court for entry of judgments and decrees of foreclosure for numerous properties, including Lockhart's residential property.

In support of its petition, the Municipality submitted the affidavit of the municipal treasurer, who certified that "the attached foreclosure list is the true and accurate payment status of real property taxes and special assessments . . . levied by the Municipality of Anchorage." The treasurer also certified that "the taxes and special assessments described in the attached foreclosure list were not paid, are delinquent, and are due the Municipality . . . ."

The Municipality published the foreclosure list in the Alaska Star, a weekly newspaper published at Eagle River, for four consecutive weeks. On March 4, 2010, the Municipality mailed a notice of the foreclosure proceedings to each owner on the foreclosure list. Lockhart received his mailed notice, which contained the information

mandated by AS 29.45.330(a)(3).**[1]** The Municipality's foreclosure specialist, Carla Johnson, filed an affidavit stating that the publication was "[i]n accordance with AS 29.45.330(a)(2) and AS 29.45.330(b)." Johnson also stated in her affidavit that she mailed the notice "[i]n accordance with AS 29.45.330(a)(3) and AS 29.45.350."

On March 8 Lockhart sent a letter to the Municipality in response to the foreclosure notice he had received by mail. Lockhart's letter disputed the Municipality's authority to levy taxes on his property. On March 23 the Municipality responded with a letter stating: "If you have an objection to tax foreclosure you must file your objection with the court by April 26, 2010."

Lockhart hand delivered another letter to the Municipality in late March. He confirmed in this letter that he had received the Municipality's response to his original letter. He then asked the Municipality to provide him with details of the foreclosure proceedings, including the case number, so he could review the petition and respond with "proper objection(s), if any." The Municipality responded by mail, providing Lockhart with the foreclosure petition's case number and the location of Lockhart's property listed in the petition. The Municipality again advised Lockhart that, in accordance with AS 29.45.370, he could file a written answer with the superior court if he disputed the petition.**[2]**

In April Lockhart filed in superior court his "Motion to Remove Name from [F]oreclosure List." Lockhart's motion asserted that the Municipality had committed

---

**[1]** AS 29.45.330(a)(3) requires the Municipality to, "within 10 days after the first publication or posting, mail to the last known owner of each property . . . a notice advising of the foreclosure proceeding . . . and describing the property and the amount due as stated on the list."

**[2]** AS 29.45.370 provides, in relevant part: "A person having an interest in a lot on the foreclosure list may file an answer within 30 days after the date of last publication, specifying the person's objection."

"several serious errors" that, if brought to the court's attention, would demonstrate that his property was not properly included in the foreclosure petition.

The Municipality then moved for entry of judgments and decrees of foreclosure for the properties for which taxes were delinquent and unpaid but did not seek foreclosure on Lockhart's property due to his objections and his pending motion. The superior court, noting the objections filed by Lockhart, entered a final judgment and decree of foreclosure in early June, but exempted Lockhart's property from the decree. Nonetheless, on the same day, the court denied Lockhart's motion to remove his name from the foreclosure list.

In July Lockhart filed a document in which he alleged that: (1) there were "serious discrepancies" in the Municipality's filings; (2) the Municipality had secretly initiated foreclosure proceedings; (3) the Municipality was motivated by racial animus; and (4) he was entitled to a senior citizen real property exemption.

In late July the Municipality moved for a summary decision denying Lockhart's objections to foreclosure. The Municipality's motion attempted to interpret and respond to Lockhart's objections. Most substantively, in response to Lockhart's argument that he was entitled to the senior citizen tax exemption, the Municipality noted that Lockhart had never alleged that he had applied for that exemption. Lockhart filed a response in which he seemed to argue that he had a fiduciary relationship with the Municipality's attorney and that he had signed no contract with the Municipality.

In late August the superior court denied Lockhart's objections to foreclosure. The Municipality then submitted a proposed final judgment and decree of foreclosure for Lockhart's property; the superior court entered the requested final judgment and decree in September.

Lockhart appeals.

## III. STANDARD OF REVIEW

When reviewing a grant of summary judgment in foreclosure proceedings, we "must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts."[3] We consider questions of law using our independent judgment, adopting "the rule that is most persuasive in light of precedent, reason, and policy."[4]

## IV. DISCUSSION

Lockhart appeals pro se. We construe pro se briefs liberally,[5] and here we read Lockhart's brief as advancing five different contentions.

### A. The Superior Court Did Not Err In Finding That The Municipality Gave Lockhart Proper Notice Of The Foreclosure Action.

Lockhart appears to argue that he never received personal service of process, as mandated by Alaska Civil Rule 4(d). The Municipality responds that it is not required to personally serve each property owner on the foreclosure list, and that it complied with the mailing and publication requirements of AS 29.45.330(a).

The Municipality submitted affidavits and documentary evidence to the superior court that establish that the Municipality followed the mailing procedures mandated by AS 29.45.330(a). Indeed, by March 8 Lockhart had mailed a letter to the

---

[3] *Cool Homes, Inc. v. Fairbanks N. Star Borough*, 860 P.2d 1248, 1254 (Alaska 1993) (internal citation and quotation marks omitted).

[4] *In re Tammy J.*, 270 P.3d 805, 809 (Alaska 2012) (quoting *Bailey v. State, Dep't of Corr., Bd. of Parole*, 224 P.3d 111, 116 (Alaska 2010)).

[5] *See Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1150 (Alaska 2009) (construing pro se litigant's complaint as raising four distinct causes of action).

Municipality in response to the notice of foreclosure he evidently received in the mail. Lockhart's claim of inadequate service has no merit.[6]

Likewise, Lockhart's contentions invoking Alaska Civil Rule 58.2 are misplaced. Civil Rule 58.2, titled "Judgments for the Payment of Money," establishes the information a court-approved pecuniary judgment must contain. Even if a liability for unpaid property taxes were considered to be such a judgment, Lockhart does not explain how the Municipality's foreclosure filings or the court's decrees failed to comply with the rule in any way pertinent here.

**B.      There Is No Evidence The Municipality Overestimated Lockhart's Property Tax Liability.**

Lockhart argues that he was "wrongfully denied the use of [a] Senior Citizen's Real Property Tax waiver's discount." The Municipality responds that Lockhart bears the burden of showing that his property is exempt, and it contends that he has not provided any evidence that he applied for, or was wrongfully denied, an exemption.

Anchorage Municipal Code (AMC) 12.15.015(D)(1)(a)-(b) provides that the "first $150,000.00 of assessed value of real property is exempt from taxation" if: (1) the property was owned and occupied by the taxpayer for at least 185 days prior to January 1 of the applicable tax year; (2) the taxpayer was a resident of the State of

---

[6]      Lockhart challenges notice but raises no specific issue about the adequacy of notice by publication here. The Municipality published its foreclosure list in the Alaska Star. Alaska Statute 29.45.330(a)(2) required the Municipality to "publish the foreclosure list for four consecutive weeks *in a newspaper of general circulation distributed in the municipality . . . .*" (Emphasis added.) We consider a publication to be a "newspaper of general circulation" in a particular community if it "contains news of general interest to the community and reaches a diverse readership." *Moore v. State*, 553 P.2d 8, 21 (Alaska 1976). Lockhart does not argue that the newspaper the Municipality used here did not satisfy the statutory standard.

Alaska for the entire year prior to the exemption year; and (3) the taxpayer has reached 65 years of age prior to January 1 of the year for which the exemption applies. The AMC generally provides for "strict enforcement" of exemption application deadlines and requires exemption applications to be filed "no later than March 15 of the tax year in which the exemption is requested."[7] But it also states that "[i]f an exemption has been approved, and there is no change in ownership or use, the owner of record may qualify annually for the exemption in successive tax years by providing annual certification to the assessor" by March 15.[8] The AMC further provides that "[a] qualified senior citizen need not file an application for successive tax years if there is no change in [any] factor affecting qualification for the exemption."[9]

Lockhart refers us to no evidence that he ever applied for the exemption, either in the pertinent tax year or in any year past.[10] And in his initial response in the superior court, Lockhart instead claimed that he was "[n]ever permitted" the senior citizen's tax exemption "as many others enjoyed." We therefore reject Lockhart's claim that he was improperly denied the exemption.

Lockhart also argues that the Municipality overvalued his property when it determined how much tax to assess. He states that he purchased the property in 1948,

---

[7]     AMC 12.15.015(C)(2).

[8]     AMC 12.15.015(C)(3)-(4).

[9]     AMC 12.15.015(D)(1)(e).

[10]     A passage in Lockhart's brief could be interpreted as suggesting that he was allowed the exemption for the 2010 tax year. But he has cited no evidence supporting that suggestion, and the record contains no evidence that he ever applied for, or was granted, the senior citizen exemption. Likewise, he has not cited any evidence that if he did apply, the Municipality erroneously denied his application. Nor does he address under what circumstances any past error in ruling on an exemption application could be raised in an objection to foreclosure for failure to pay taxes.

and that his house was initially valued at $48,700. He contends that he has not improved the property in any way and states that it is "beyond appellant's knowledge" how the Municipality could value the property at $320,000.

Lockhart refers us to no record evidence supporting his assertion that his property was overvalued. And, as the Municipality notes, Lockhart did not follow the procedures found in AMC 12.05.055 for appealing property tax assessments. Given both this evidentiary vacuum and this procedural hurdle, we cannot consider Lockhart's overvaluation argument.

We accordingly must reject Lockhart's challenge to the amount of his property tax liability.

## C. The Municipality Has The Authority To Tax Lockhart's Property.

Lockhart argues that he has "sovereign rights" that preclude the Municipality from assessing property taxes or foreclosing on his property. Lockhart also appears to argue that the Municipality cannot tax his property because he never signed a contract permitting it to do so. The Municipality counters that "the obligation to pay property taxes is not based on contract; it is found in state and municipal law." The Municipality is correct. Alaska Statute 29.45.010 expressly authorized the Municipality to levy taxes on real property within its boundaries; Lockhart's argument has no merit.[11]

## D. The Municipality's Attorneys Owed No Fiduciary Duty To Lockhart.

Lockhart argues that the Municipality's foreclosure proceedings violated the attorney-client privilege. He appears to contend that the Municipality's attorneys owed him fiduciary duties that prevented them from asking the court to foreclose on his

---

[11] Lockhart's brief also invokes the Uniform Commercial Code (UCC). The UCC does not apply to the dispute before us.

property. But as the Municipality correctly notes, its attorneys do not represent Lockhart. Lockhart's argument to the contrary is without merit.

E. **Lockhart's Allegations Of Racial Discrimination Are Unsupported By Any Evidence In The Record**.

Lockhart's superior court counterclaims alleged that the Municipality has been discriminating against him on the basis of his race since the 1970s. Lockhart's appellate brief summarily contends that the Municipality's foreclosure reflects "just plain [r]acial prejudice." Lockhart also seems to assert that the superior court discriminated against him on the basis of race.

Lockhart's claims of racial discrimination are too vague to be the basis for appellate consideration and are unsupported by evidence or other indicia of bias during the foreclosure proceedings. There is no indication either the Municipality or the superior court was influenced in any way by race in the foreclosure proceedings. We therefore reject Lockhart's racial discrimination argument.

V. **CONCLUSION**

We AFFIRM the superior court's final judgment and decree of foreclosure on Lockhart's property.