NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JAMES ALLEN CHARLES JR., | Court of Appeals No. A-12119 |
| Appellant, | Trial Court No. 1KE-93-730 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2630 — December 28, 2018 |

Appeal from the Superior Court, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Timothy Ayer (opening and reply brief) and Callie Patton Kim (supplemental brief and oral argument), Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Terisia K. Chleborad, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards and Jahna Lindemuth, Attorneys General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

James Allen Charles Jr. is a convicted sex offender. In November 2014, the superior court revoked Charles's probation based on Charles's failure to attend a polygraph appointment with his probation officer. The court imposed 9 months to serve for this violation. This was the State's second petition to revoke Charles's probation.[1] The first petition to revoke Charles's probation (based on excessive use of alcohol) had been resolved less than a month before the second petition was filed.

On appeal, Charles argues that the superior court erred when it revoked his probation based on a single missed appointment. According to Charles, a defendant's probation can only be revoked for a "willful" violation of the terms of his probation. Charles contends that he did not knowingly or purposely miss his appointment and that the court therefore had no authority to revoke his probation.

For the reasons explained here, we conclude that the existence of "good cause" to revoke a defendant's probation as required by AS 12.55.110(a) does not necessarily depend on the willfulness of the violation. Instead, it depends on the nature of the probation condition, the applicable mental state for the violation, and the significance of the violation with regard to the defendant's amenability to continued probation supervision.[2] In the current case, the superior court found that (1) Charles had notice of the polygraph appointment and his obligation to attend the appointment; (2) Charles failed to attend the polygraph appointment for reasons that were within his control; (3) the missed polygraph appointment and Charles's failure to keep track of this appointment were part of a larger pattern of Charles's noncompliance with and resistance to the rehabilitative aspects of probation; and (4) Charles's failure to commit to his

---

[1] Prior to these probation revocations, Charles's mandatory parole had been revoked multiple times.

[2] See *Pulusila v. State*, 425 P.3d 175, 180-82 (Alaska App. 2018).

responsibilities as a sex offender on probation and his failure to actively engage in the rehabilitative process made him dangerous to the community. These findings are well supported by the record and sufficient to constitute "good cause" to revoke Charles's probation in this case. Accordingly, we find no error in the court's decision to revoke Charles's probation.

*Background facts and prior proceedings*

In 1983, Charles was convicted of first-degree burglary and second-degree sexual assault, and sentenced to 6 years to serve. Charles's probation in that case was later revoked for selling cocaine to an undercover police agent, and he ultimately served the remainder of his sentence in prison.

In 1994, Charles was convicted of first-degree sexual assault, second-degree sexual assault, and second-degree sexual abuse of a minor for sexually assaulting a fourteen-year-old.[3] As a second felony offender, Charles received a composite sentence of 25 years with 5 years suspended (20 years to serve) for these new crimes.

Prior to his release on mandatory parole, Charles's parole was anticipatorily revoked for failure to participate in and complete court-ordered sex offender treatment while in prison. Following his release, Charles's parole was revoked more than once based on his failure to comply with the terms of his mandatory parole. Charles finally completed his mandatory parole in March 2014, but his supervision on probation continued.

Charles continued to struggle with the obligations of his probation. Charles was frequently late to his appointments with his probation officer, and he would often

---

[3]  *Charles v. State*, 1997 WL 33832396, at *1-2 (Alaska App. Apr. 2, 1997) (unpublished).

arrive with incomplete forms or accounts of his daily activities that were not sufficiently detailed. Charles also tested positive for drug use.

In August 2014, the State filed its first petition to revoke Charles's probation, alleging excessive use of alcohol based on a police contact in which Charles was suspected of driving under the influence. As a result of this petition to revoke, Charles's probation conditions were modified to prohibit any use of alcohol.

A little more than a month later, on September 26, 2014, the State filed a second petition to revoke Charles's probation after Charles missed a scheduled polygraph examination. In this petition, the probation officer alleged that Charles posed a "high risk" for assaulting or abusing new victims.

At the adjudication hearing that followed, Charles acknowledged that he had received notice of the polygraph examination from his probation officer, who had notified him by phone and who had also written down the date and time of the appointment on a business card and given it to Charles.

According to Charles, he put the polygraph appointment card into his wallet along with an appointment card for his sex offender treatment, which was scheduled for four days after the polygraph appointment.

Sometime on September 24, the day before the polygraph appointment, Charles received a text from his employer telling him that he needed to work the following day. Charles testified that it did not occur to him that he was not available to work and it was only the next day, after he returned home from working, that he became concerned that he might have had an appointment. When Charles first looked in his wallet, he only saw the appointment card for the sex offender treatment (which was scheduled for four days later). But when Charles looked behind that appointment card and saw the polygraph appointment card, he realized that he had missed the polygraph appointment. Charles then called his probation officer and left a message explaining

what happened. Charles also went into the probation office the following morning and met with his probation officer. He was given an appointment for the following Monday and was allowed to leave the office. However, later that same day, he was called back to the probation office and arrested. The probation officer later explained that the decision to petition for revocation was based on Charles's status as an untreated sex offender and his pattern of failing to take his probation obligations seriously. The probation officer also explained that rescheduling the polygraph appointment would not have been a simple matter, and that these appointments required significant coordination and were critical to the sex offender containment model used to supervise sex offenders on probation.

At the adjudication hearing, Charles's attorney argued that Charles's probation should not be revoked based on a single missed appointment. The attorney further argued that Charles had not "willfully" failed to attend his appointment; instead he had simply made "an honest mistake."

The superior court agreed with Charles's attorney that Charles had not missed his polygraph appointment on purpose. But the court noted that Charles had a legal obligation "to do what it takes to make sure [he was] not going to forget [the appointment]," and that he had failed to meet that obligation. The court emphasized that its decision would be different if Charles had missed the appointment due to circumstances that were outside his control.

At the disposition hearing that followed, the court heard argument about Charles's larger pattern of inattention to his probation obligations and the safety risks that Charles posed as an untreated sex offender. The court subsequently revoked Charles's probation and imposed 9 months of his remaining suspended sentence, concluding that Charles continued to be a dangerous offender with a high risk of reoffending and a very low chance of successfully completing his probation.

*Why we uphold the superior court's revocation of Charles's probation*

Charles argues that Alaska law prohibits a trial court from revoking a defendant's probation unless the court finds that the defendant "willfully" or knowingly violated the terms of his probation. Charles also asserts that due process prohibits a court from finding a violation of probation without proof of a culpable mental state.

The State contends that a defendant can be held strictly liable for any violation of probation that may occur, even if the violation resulted from circumstances outside the defendant's control, or otherwise occurred through no fault of the defendant. The State argues that a defendant's mental state is only relevant at the disposition stage — and that, even then, the State is not required to prove any particular mental state.

We disagree with both parties for the reasons we explained in a recent case, *Pulusila v. State*.[4] In *Pulusila*, we rejected the State's contention "that a defendant's lack of culpability is completely irrelevant when a court decides whether the facts establish good cause to revoke the defendant's probation."[5] Instead, we concluded that a defendant's mental state and a defendant's "blameworthiness" for the violation could be critical to the determination of whether the defendant's probation should be revoked, and to the determination of how much, if any, suspended time should be imposed.[6]

As we explained in *Pulusila*, the ultimate question in any probation revocation proceeding is whether "good cause" exists to revoke the defendant's probation.[7] To find good cause to revoke a defendant's probation, a trial judge must find

---

[4]  *Pulusila v. State*, 425 P.3d 175 (Alaska App. 2018).

[5]  *Id.* at 181.

[6]  *Id.* at 177, 179.

[7]  *See* AS 12.55.110(a); *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973); *Pulusila*, 425 P.3d at 179.

that "continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation."[8] Revocation should follow a violation of a condition of probation only when "that violation indicates that the corrective aims of probation cannot be achieved."[9]

Our holding in *Pulusila* is in accord with the United States Supreme Court's opinion in *Bearden v. Georgia*.[10] In *Bearden*, the United States Supreme Court held that a defendant's probation cannot be revoked solely based on the defendant's failure to pay a fine or restitution if the defendant made "sufficient bona fide efforts" to fulfill his financial obligations under the terms of his probation but was nevertheless unable to do so.[11] As the Court explained, imprisonment in such a case would be contrary to the "fundamental fairness required by the Fourteenth Amendment" because it "would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine."[12] The Court also noted, however, that if the probationer willfully refused to pay the fine or failed to make bona fide efforts to pay, revocation of the defendant's probation and imposition of suspended time could be justified.[13]

In the current case, the superior court found that Charles had failed to take reasonable steps to keep track of his polygraph appointment. The court also found that Charles's failure to keep track of this appointment was part of a larger pattern of noncompliance with his probation obligations and a failure to fully engage in treatment.

---

[8] *Pulusila*, 425 P.3d at 178-79 (quoting *Trumbly*, 515 P.2d at 709).

[9] *Id.* at 179 (quoting *Trumbly*, 515 P.2d at 709).

[10] *Bearden v. Georgia*, 461 U.S. 660 (1983).

[11] *Id.* at 660-61.

[12] *Id.* at 672-73.

[13] *Id.* at 672.

The court was also clear that it would not have found a violation if Charles's failure to attend his appointment had been due to circumstances outside his control — such as getting in a car accident or being at the hospital.

On appeal, Charles asserts that the court essentially found that he acted only with "criminal negligence" when he failed to attend the polygraph appointment. Charles then argues that a higher culpable mental state — recklessly or knowingly — is required before revocation of a defendant's probation can occur. In support of this claim, Charles cites *Hamrick v. State,* a 2003 case in which we reversed the defendant's probation revocation because we concluded that the State had failed to show a "willful violation" of Hamrick's probation.[14]

But *Hamrick* is distinguishable from the present case. In *Hamrick*, we reversed the trial court's anticipatory revocation of Hamrick's probation because we concluded that the Department of Corrections had failed to provide sufficient notice to Hamrick that his actions would constitute a violation of his probation.[15] As we explained in our decision, the problem in *Hamrick* arose primarily from the ambiguity of the probation condition.[16] Hamrick's probation condition required him to "successfully complete an approved sexual offender treatment program as directed by the Department of Corrections."[17] We concluded that "as directed by the Department of Corrections" meant that the department *could* potentially petition the court to revoke Hamrick's

---

[14]   *Hamrick v. State*, 64 P.3d 175 (Alaska App. 2003).

[15]   *Id.* at 178 ("[I]n order to find a willful violation, we believe that the department needed to establish that Hamrick was fully aware that his behavior was in violation of his conditions of probation and would result in his revocation.")

[16]   *Id.* at 178.

[17]   *Id.* at 176.

probation if he failed to file a timely second application for treatment (Hamrick's first application was lost), but only if the department had made it sufficiently clear to Hamrick that he was required to file the second application as part of his probation condition.[18] Because the record showed that Hamrick had never been directly ordered to file the second application or to file the second application by a particular time, and that he had never been informed that filing the second application was part of his obligations under his probation condition, we reversed Hamrick's probation revocation.[19]

Thus, the underlying issue in *Hamrick* was not whether Hamrick purposely or willfully delayed submitting his treatment application on time. Instead, the problem was the lack of proper notice to Hamrick that a delay in filing a second application would constitute a violation of the conditions of his probation.

There is no such lack of notice in Charles's case. Here, the probation condition and Charles's duties under the probation condition were both unambiguously communicated to Charles. As Charles himself concedes, he was aware that he was required to abide by any specific instructions of his probation officer, and he was also aware that his probation officer had instructed him to attend the polygraph appointment. Charles further concedes that he was given proper notice of the date of the polygraph appointment, and there was no confusion over his obligation to attend this appointment. Although the superior court found that Charles may not have consciously made a decision to miss that appointment, the superior court also found that Charles's failure to keep track of and attend the polygraph appointment was part of a larger pattern of

---

[18] *Id.* at 178-79 ("[I]n order to revoke Hamrick's probation for failing to file a timely application, we believe that the Department of Corrections had the duty to make Hamrick's duties clear to him and to make sure that Hamrick understood that his failure to comply would violate his probation.").

[19] *Id.*

noncompliance and failure to engage in the treatment-related obligations of his sex offender probation. Thus, the court could reasonably conclude that Charles's violation indicated that "the corrective aims of probation" could not be achieved without revocation of Charles's probation.[20]

*Conclusion*

For the foregoing reasons, we AFFIRM the judgment of the superior court.

---

[20] *Pulusila v. State*, 425 P.3d 175, 179 (Alaska App. 2018) (quoting *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973)).