**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 25 MAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court dated August 31, 2018 at No. |
| | : | 1893 MDA 2017 affirming the Order |
| v. | : | of the Court of Common Pleas of |
| | : | Lycoming County, Criminal Division, |
| | : | dated October 26, 2017 at No. CP- |
| TODD DANIEL HOOVER, | : | 41-CR-2120-2012 |
| | : | |
| Appellant | : | ARGUED: November 19, 2019 |
| | : | |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE TODD**                                            **DECIDED: May 19, 2020**

In this discretionary appeal, we consider whether the trial court erred by vacating, pursuant to 42 Pa.C.S. § 5505 ("Modification of orders"), a prior order granting a petition for early termination of a sentence of intermediate punishment based on the court's discovery that the defendant committed a new offense shortly after the early termination order was entered. For the reasons that follow, we hold that, in the instant case, the trial court erred, and, therefore, we reverse the decision of the Superior Court affirming the trial court's order.

In May 2013, Appellant Todd Daniel Hoover pled guilty to one count of driving under the influence of alcohol ("DUI") - general impairment, and one count of DUI - highest rate of impairment. On August 13, 2013, the trial court sentenced Appellant to a term of five years intermediate punishment, which included 90 days incarceration at the Lycoming

County Prison pre-release facility. He also was ordered to pay the costs of prosecution and a $1,500 fine.

In 2017, Appellant filed a motion for early termination of his sentence of intermediate punishment pursuant to 42 Pa.C.S. § 9773, which provided, *inter alia*, that "[t]he court may at any time terminate a sentence of county intermediate punishment or increase or decrease the conditions of a sentence pursuant to section 9763 (relating to sentence of county intermediate punishment)." 42 Pa.C.S. § 9773(a) (repealed).[1] On September 29, 2017, the trial court determined that Appellant had "complied with all conditions of supervision, paid all fines and costs, and completed all obligations" associated with his county intermediate punishment, and, accordingly, granted his petition. Trial Court Order, 9/29/17. That night, however, Appellant was arrested for, and charged with, another DUI offense.

On October 2, 2017, the Lycoming County Adult Probation Office ("LCAPO") contacted the trial court and orally requested that it reconsider its order granting Appellant's petition for early termination of his sentence. The trial court granted the request the same day, and scheduled a hearing to consider "whether the Court should vacate its Order releasing [Appellant] from supervision in light of the new charges." Trial Court Opinion, 1/11/18, at 2.

In the interim, the Commonwealth filed a petition to revoke Appellant's probation, asserting that his new DUI offense constituted a violation of his probation. Appellant

---

[1] As discussed *infra*, following this Court's grant of allocatur and oral argument in this matter, the legislature repealed Section 9773 ("Modification or revocation of county intermediate punishment sentence") and Section 9774 ("Revocation of State intermediate punishment sentence") of Title 42 in their entirety, effective December 18, 2019. Additionally, "County intermediate punishment" and "State intermediate punishment" were deleted from the sentencing alternatives provided in Section 9721, and Section 9763, which previously was titled "Sentence of county intermediate punishment," was retitled "Conditions of probation." A variant on intermediate punishment is now denominated as a type of probation. *See* 42 Pa.C.S. § 9763.

proceeded to a probation revocation hearing, and the revocation court determined that, in light of the trial court's September 29, 2017 order releasing Appellant from his sentence of intermediate punishment, Appellant was not on probation when he committed the new DUI offense and, thus, could not be found to have violated the terms thereof. Nevertheless, the revocation court urged the trial court to vacate its prior order granting Appellant early release so that Appellant could "be replaced onto supervision." *Id.* (quoting Revocation Court Order, 10/13/17, at 1).

On October 23, 2017, Appellant appeared at the hearing scheduled by the trial court. For reasons unknown, the hearing was not conducted on the record. However, in its opinion pursuant to Pa.R.A.P. 1925(a), the trial court indicated that, at the time of the hearing, it "was persuaded by [Appellant's counsel] that the Court was without authority to vacate the early release Order." *Id.* at 3. The trial court further noted that it specifically asked the Commonwealth to address whether the court had jurisdiction to vacate the order. According to the court, however, it subsequently determined that it did have authority to vacate its prior order pursuant to 42 Pa.C.S. § 5505, titled "Modification of orders":

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505. Thus, by order dated October 26, 2017, the trial court vacated its September 29, 2017 order granting Appellant's petition for early termination of his sentence of county intermediate punishment. The order dated October 26, 2017 was not entered on the docket until October 31, 2017.

Appellant appealed to the Superior Court, wherein he argued that the trial court erred in vacating its prior order terminating his sentence of intermediate punishment

because the court no longer had jurisdiction over the matter. He further suggested that, because the trial court's October 26, 2017 order was not entered on the docket until October 31, 2017, it was outside the 30-day window specified in Section 5505. The Commonwealth did not file a responsive brief.

The Superior Court affirmed in a divided, unpublished memorandum opinion. *Commonwealth v. Hoover*, 1893 MDA 2017 (Pa. Super. filed Aug. 31, 2018). The majority, in an opinion authored by Senior Judge John Musmanno, and joined by Judge Judith Olson, recognized that, under Section 5505, once 30 days has passed, a trial court generally no longer has authority to alter a prior order. *Id.* at 3 (citing *Commonwealth v. Walters*, 814 A.2d 253, 256 (Pa. Super. 2002)). It further noted that a trial court's authority under Section 5505 "to modify or rescind an order is almost entirely discretionary." *Id.* (citing *Hayward v. Hayward*, 808 A.2d 232, 235 (Pa. Super. 2002)). However, the majority determined that, because the trial court, on October 2, 2017, within Section 5505's 30-day window, expressly granted reconsideration of its prior order granting Appellant's petition for early termination of his sentence, "the trial court still had jurisdiction to vacate the early release Order." *Id.* at 4 (citing 42 Pa.C.S. § 5505; Pa.R.A.P. 1701(b)(3)).

Judge Deborah Kunselman authored a dissenting memorandum, in which she agreed that, in light of the trial court's express grant of reconsideration of its prior order on October 2, 2017, the trial court retained jurisdiction under the 30-day window prescribed in Section 5505. Nevertheless, she expressed concern as to whether LCAPO had standing, in the first instance, to request reconsideration of the trial court's order terminating Appellant's sentence of intermediate punishment on the Commonwealth's behalf, and she additionally noted that LCAPO's request for reconsideration was made *ex parte.* Furthermore, relevant to the issue presently before this Court, Judge Kunselman observed that, when considering whether to modify a prior order, a trial court

generally is limited to consideration of facts that were of record in the original proceeding. *See Hoover*, 1893 MDA 2017, at 1-2 (Kunselman, J., dissenting) (citing, *inter alia*, *M.P. v. M.P.*, 54 A.3d 950 (Pa. Super. 2012) (holding that trial court abused its discretion in denying mother's custody petition seeking permission to travel with her daughter based on the court's own internet research conducted subsequent to the custody hearing); *Eck v. Eck*, 475 A.2d 825 (Pa. Super. 1984) (holding that trial court, in reversing a hearing master's award of alimony, abused its discretion by considering facts and evidence not of record)). She also suggested that the trial court's actions were inconsistent with this Court's decision in *Commonwealth v. Holmes*, 933 A.2d 57, 67 (Pa. 2007), which she cited for the proposition that a trial court's authority under Section 5505 is meant to correct errors, not to reevaluate its sentencing decision based on a defendant's subsequent conduct. Thus, Judge Kunselman concluded that the trial court erred in revoking its prior order granting Appellant's petition for early termination based on his subsequent arrest for DUI, and she would have reversed the trial court's October 26, 2017 order vacating its prior termination order, and reinstated the trial court's order of September 29, 2017.

Appellant filed a petition for allowance of appeal, and this Court granted review to consider whether, pursuant to Section 5505, the trial court had the authority to vacate its prior order granting Appellant's petition for early termination of his intermediate punishment sentence based on the court's discovery that Appellant was arrested for a new DUI offense shortly after his petition had been granted.

As a preliminary matter, we reiterate that Section 9721, which authorized a sentence of county intermediate punishment as a sentencing option, and Section 9773, which provided for the termination, modification, or revocation of a county intermediate punishment sentence, were repealed effective December 18, 2019. *See supra* note 1. Further, Section 9763, which previously was titled "Sentence of county intermediate

punishment," was retitled "Conditions of probation," and intermediate punishment is now classified as a type of probation. *See id.* However, pursuant to the amended version of Section 9771, titled "Modification or revocation of order of probation," a trial court has the "inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety." 42 Pa.C.S. § 9771(a). Thus, the issue of whether, pursuant to Section 5505, a trial court may revoke a prior order terminating a defendant's sentence of county intermediate punishment (albeit now under the label of probation) based on a defendant's subsequent actions remains; accordingly, we conclude that the amendments to the statute under which Appellant was sentenced and released do not impede our review of the broader question at hand.

Before this Court, Appellant renews his argument that the trial court erred in vacating its prior order granting his petition for early termination of his sentence of intermediate punishment. He argues that, in granting his petition, the trial court determined that he "complied with all of his sentencing conditions and demonstrated that he . . . is no longer in need of supervision." Appellant's Brief at 13 (citing *Commonwealth v. Concordia*, 97 A.3d 366, 374 (Pa. Super. 2014)). He further points out that the trial court's decision to vacate its prior order granting his petition for early termination was not due to a patent error in its order, but, rather, was based on its consideration of facts which were not of record at the time the court granted the petition, and, indeed, which did not occur until after the court granted the petition. Like the dissent below, Appellant suggests that the trial court's act of vacating its prior order was improper under *M.P.*, *Eck*, and *Holmes*.

In response, the Commonwealth argues that, under Section 5505, a trial court always has the authority to reconsider its own judgment, "except as otherwise provided or prescribed by law." Commonwealth's Brief at 10 (quoting 42 Pa.C.S. § 5505). It contends that *M.P.* and *Eck* are distinguishable because, in those cases, the litigants did not have an opportunity to respond to the off-the-record evidence considered by the trial court, whereas, in the instant case, Appellant had a chance to appear at a hearing and respond to the evidence pertaining to his new DUI offense. Finally, the Commonwealth submits that, because, immediately following the trial court's grant of his petition for early termination of his sentence of intermediate punishment, Appellant committed the same type of offense (DUI) for which he was serving his initial sentence, it was reasonable for the trial court to reconsider its determination as to whether Appellant was still in need of supervision.

The instant case presents an issue of statutory interpretation, which is a pure question of law. Thus, our standard of review is *de novo,* and our scope of review is plenary. *SEPTA v. City of Philadelphia*, 101 A.3d 79, 87 (Pa. 2014). The overriding object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly" in enacting the statute at issue. 1 Pa.C.S. § 1921(a). Accordingly, we are required to interpret a statute so as to give effect to all of its provisions, "if possible." *Id.* If statutory language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). Hence, when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent. In situations where the words of a statute "are not explicit," the legislature's intent may be determined by considering any or all of the factors enumerated in Section 1921(c) of the Statutory Construction Act. *Commonwealth v. Giulian*, 141 A.3d 1262, 1278 (Pa. 2016). Moreover, in determining legislative intent,

it is presumed that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(a). Further, "statutes are to be construed whenever possible to uphold their constitutionality." *Working Families Party v. Commonwealth*, 209 A.3d 270, 279 (Pa. 2019) (quoting *In re William L.*, 383 A.2d 1228, 1231 (Pa. 1978)); 1 Pa.C.S. § 1922(3) (in ascertaining intent of General Assembly in enactment of statute, we presume "t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth").

As noted above, Section 5505 provides:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505.

The language of Section 5505 is unambiguous. Pursuant thereto, a trial court may modify or rescind any order which has not been appealed, provided the court acts within 30 days and provides notice to the parties, *except as otherwise provided or prescribed by law*. In the instant case, the trial court's order granting Appellant's petition for early termination of his sentence of intermediate punishment was not appealed; the trial court acted within 30 days of the entry of the order; and the trial court provided notice to the parties of its intent to rescind its prior order. Thus, under the plain language of Section 5505, the trial court had the authority to vacate its prior order, unless "otherwise provided or prescribed by law."

Appellant points to no statute or rule − and, indeed, our research reveals none − that would, on its face, prohibit the trial court's modification or revocation of its prior order pursuant to Section 5505 under the circumstances of the instant case. However, Appellant maintains that the trial court erred by vacating its prior order because: (1) its

decision was not based on a patent error in its order granting early termination of his intermediate sentence, and (2) its decision was based on a fact that was not of record at the time it granted early termination of his intermediate sentence.

To the extent Appellant suggests that the trial court erred in vacating its prior order because the order did not contain a patent error, he misconstrues the case law pertaining to correction of patent errors under Section 5505. In *Holmes* and its consolidated companion case, *Commonwealth v. Whitfield,* we considered the interplay between the 30-day time limitation of Section 5505 and the inherent power of courts to correct patent errors in the record beyond Section 5505's 30-day window. In upholding the trial court's orders modifying sentences to correct the errors,[2] which were entered *outside* of the 30-day window specified in Section 5505, we emphasized that a trial court's inherent power of correction encompasses patent and obvious errors that appear on the face of an order, but that it also extends to such errors that emerge upon consideration of information in the contemporaneous record. *Holmes,* 933 A.2d at 67. We cautioned, however, that, while courts have the inherent power to correct patent errors outside of 30 days,

> [t]his exception to the general rule of Section 5505 cannot expand to swallow the rule. In applying the exception . . . it is the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power. Not all illegal sentences will be amendable to correction as patent errors. Moreover, *the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient.* The cases at bar are not cases where a court reconsidered the application of its sentencing discretion or its interpretation of a nuanced or ambiguous statutory provision. These cases involve clear errors in the imposition of sentences that were

---

[2] Holmes was erroneously resentenced as if he had violated probation, when, in fact, he was not on probation, but had violated parole. Whitfield was erroneously found to have violated probation despite having never been sentenced to probation.

incompatible with the record, as in *Whitfield*, or black letter law, as in *Holmes*.

*Id.* at 66-67 (emphasis added).

While Appellant suggests that the trial court's actions in this case conflict with the above-italicized language in *Holmes* because, herein, the court's decision "did not result from patent error, but was more akin to changing a sentence because later reflection caused the court to feel the sentence was too harsh or lenient," Appellant's Brief at 17, as noted, *Holmes* pertained to a trial court's authority to act *outside* the 30-day period prescribed by Section 5505. It did not address a trial court's authority to act within 30 days, and does not stand for the proposition that a trial court's authority under Section 5505 to modify or vacate a prior order within 30 days of its entry is limited to the correction of patent errors.

Turning to Appellant's argument that the trial court did not have the authority to vacate its prior order based on a fact that was not of record at the time it granted his petition for early termination, we note that Appellant cites the Superior Court's decisions in *M.P.* and *Eck*. In *M.P.*, the Superior Court held that the trial court abused its discretion when it denied a mother's custody petition seeking permission to travel with her daughter based on its own internet research which was conducted subsequent to the custody hearing. In *Eck*, the Superior Court held that the trial court erred in reversing a hearing master's award of alimony based on a letter the trial court received after the master's hearing. In the first instance, we note that neither *M.P.*, nor *Eck*, involved Section 5505. Moreover, in both *M.P.* and *Eck*, the trial courts' decisions were overturned because the orders at issue were based on the consideration of evidence outside the record, *and* because the parties had no notice of, or opportunity to respond to, the same. As noted above, in the instant case, Appellant had notice of the basis for the trial court's

modification of its prior order, and, indeed, had the opportunity to respond at a hearing. Thus, we find those decisions distinguishable.

However, notwithstanding the above, and for reasons explained below, we conclude that, were we to uphold the trial court's revocation of its prior order granting Appellant's petition for early termination based on Appellant's subsequent DUI offense, we would be sanctioning a construction of Section 5505 that would violate due process, which we must avoid. *See Working Families Party*, *supra*; 1 Pa.C.S. § 1922(3).

As the Commonwealth acknowledges in its brief, the Superior Court, in *Concordia*, *supra*, observed that "[c]ounty intermediate punishment programs are similar to traditional probation sentences." 97 A.3d at 373. Indeed, as a result of the recent legislative amendments discussed above, both county and state intermediate punishment programs now fall under the umbrella of probation.

It is well-settled that due process protections apply both to individuals who are on probation, *see Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and to individuals who are on parole, *see Morrissey v. Brewer*, 408 U.S. 471 (1972). In *Morrissey*, the high Court addressed what due process protections are required when an individual's parole is revoked. It explained that, although parole is not a part of a criminal prosecution, in that it arises after the end of the criminal prosecution and after the imposition of sentence, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but . . . of the conditional liberty properly dependent on observance of special parole conditions." 408 U.S. at 480. Further, "the loss of liberty entailed [by revocation] is a serious deprivation requiring that the parolee be accorded due process." *Gagnon*, 411 U.S. at 781 (citing *Morrissey*).

In *Morrissey*, the high Court determined that due process requires that parolees facing revocation be afforded, *inter alia*, the opportunity to be heard and the opportunity

to confront and cross-examine adverse witnesses. Accordingly, the Court held that a parolee who is alleged to have violated the conditions of his or her parole is entitled to two hearings: "a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and . . . a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Id.* at 781-82.[3]

In addition to the right to be heard and the right to confrontation, due process requires that individuals be given fair warning of the acts which may lead to revocation of parole or probation. *United States v. Dane,* 570 F.2d 840, 843 (9th Cir. 1977) ("It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty."); *Bailey v. State, Dep't of Corrections, Bd. of Parole*, 224 P.3d 111, 116 (Alaska 2010) ("Due process includes reasonable notice, which in [the parole] context requires notice of what conditions an individual must satisfy to avoid revocation of his parole."); *G.G.D. v. State*, 292 N.W.2d 853, 857 (Wis. 1980) ("Just as there is an essential requirement that a criminal statute give fair warning of the conduct subject to punishment, so too must a probationer be given 'some fair warning' of the conditions upon which his continued right to probation depends." (citation omitted)).[4]

---

[3] In our recent decision in *Commonwealth v. Foster*, we held that a trial court improperly revoked an appellant's probation based on social media posts made by the appellant after he was sentenced to probation, when the appellant had not violated any specific condition of his probation. We deduced that Section 9754, which sets forth the requirements of an order of probation, and Section 9771, which sets forth the requirements of an order finding a defendant in violation of probation, were enacted by our General Assembly in an apparent response to *Morrisey*. 214 A.3d 1240, 1248 (Pa. 2019).

[4] Some courts have suggested that knowledge may be imputed to a probationer that the commission of a criminal act will lead to the revocation of probation. *See, e.g., Dane*, 570 F.2d at 844. As noted above, however, Appellant was not on probation, and, indeed, had been released from the terms of his sentence entirely, at the time he committed his DUI offense.

We appreciate that a trial court's revocation of a prior order terminating a sentence of intermediate punishment, which occurred in the instant case, is not the same as a revocation of probation or parole. However, we find that both circumstances infringe upon a similar liberty interest. As the high Court observed in *Morrissey*,

> [t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. *The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.* . . .
>
> We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its determination calls for some orderly process, however informal.

408 U.S. at 482 (footnotes omitted, emphasis added).

A review of the trial court's August 13, 2014 order sentencing Appellant to county intermediate punishment indicates that, in addition to 90 days in the Lycoming County Prison, Appellant was required to perform 50 hours of community service, pay fees and costs, complete a DUI intervention program, and "complete any and all other programs and conditions to which he is directed by the Adult Probation Office." Trial Court Order, 8/13/13, at 1. The order additionally provided: "In addition to the other imposed conditions

of supervision, [Appellant] is specially (sic) directed not to travel outside the Commonwealth of Pennsylvania without specific approval from the Court." *Id.* at 2. Upon termination of his intermediate punishment sentence, Appellant was no longer subject to such restrictions. Thus, we conclude that termination of Appellant's sentence of intermediate punishment implicated his liberty interests.[5]

As the trial court's revocation of its order terminating Appellant's sentence of intermediate punishment infringes upon a liberty interest similar to that which is infringed upon in the revocation of probation or parole, we further conclude that due process protections must apply in both circumstances. In particular, we find that Appellant was entitled to notice and fair warning of any subsequent act or behavior that could lead to the trial court's revocation of its order terminating his sentence of intermediate punishment. *Cf. Dane; Bailey; G.G.D.*

In the instant case, there is no record evidence that the trial court conditioned its grant of Appellant's petition for early termination of his sentence of county intermediate punishment on Appellant's future conduct. In particular, there is no suggestion that Appellant was aware that his DUI offense could lead to the trial court's revocation of the early termination order. Thus, were we to interpret Section 5505 as allowing the trial court to revoke its prior order terminating Appellant's sentence of intermediate punishment based on Appellant's subsequent conduct, when Appellant lacked fair warning that such conduct could result in the trial court's revocation of its termination order, we would be endorsing a construction of Section 5505 that would result in a violation of Appellant's

---

[5] Although unnecessary to our conclusion in the instant case, it might be argued that the termination of a sentence of intermediate punishment or probation implicates an even greater liberty interest than a grant of probation or parole, as termination of a sentence seemingly connotes finality, without the imposition of any conditions.

right to due process.  *See Bailey*, 224 P.3d at 118.  Again, we must avoid construing a statute in such a manner.  *See Working Families Party, supra.*

Notwithstanding the above, in support of its contention that the trial court did, in fact, have the authority to "reconsider" its order because the "facts, subsequent to the entry of the order, call[ed] on the court[]" to do so, Commonwealth's Brief at 14, the Commonwealth cites *Commonwealth v. Postell,* 693 A.2d 612 (Pa. Super. 1997), wherein the defendant was convicted of, *inter alia*, aggravated assault, and sentenced to four to ten years in prison.  As a condition of his sentence, the defendant was ordered to have no further contact with the victim.  On the evening of the day he was sentenced, however, the defendant telephoned the victim and threatened her.  The Commonwealth filed a timely motion for reconsideration, which the court granted, and, following a hearing, the court imposed an increased sentence of five to ten years imprisonment.  The defendant appealed, arguing that the trial court, in resentencing him to a greater minimum period of incarceration, violated his rights under the Double Jeopardy clauses of the United States and Pennsylvania Constitutions.  The Superior Court rejected his argument, concluding he did not have a reasonable expectation of finality with respect to his sentence, and, thus, that double jeopardy protections did not apply.  Specifically, the court reasoned that a defendant who intentionally deceives the sentencing authority or thwarts the sentencing process cannot have a "legitimate expectation regarding the sentence thereby procured," and held that, because the defendant "intentionally deceived the trial court into imposing a more lenient sentence by promising that he would not have any contact with the victim," he had no legitimate expectation regarding his sentence.  *Id.* at 616.  Notably, however, and in contrast to the instant case, the trial court in *Postell* revoked its initial sentence upon finding that the defendant violated a *specific condition of his sentence* − that he

have no contact with the victim.[6]  Once again, in the instant case, there is no evidence that the trial court conditioned its grant of Appellant's petition for early termination of his sentence of intermediate punishment on Appellant's future behavior.

In summary, we recognize the broad discretion afforded to trial courts under Section 5505.  However, were we to interpret Section 5505 as permitting a trial court to vacate a prior order terminating an individual's sentence of intermediate punishment or probation based on an individual's subsequent conduct, when the individual did not have notice or fair warning that the termination was subject to certain conditions, and, thus, could not conform his conduct accordingly, we would countenance an interpretation of the statute that would violate due process.[7]  For this reason, in order to construe Section

---

[6] The Commonwealth also relies on *Moore v. Moore*, 634 A.2d 163 (Pa. 1993), a custody case in which this Court held that the trial court had the authority to grant a timely (filed within 30 days) petition for reconsideration, hold a supplemental hearing at which it heard new evidence, and vacate its prior decision based on the new evidence.  In so holding, we emphasized that, "[i]n light of the unique obligation placed upon the trial court in a custody case, to consider all pertinent information regarding the issue of what is in the best interest of the child, we can find no abuse of discretion by the trial court herein, in holding the supplemental hearing."  *Id.* at 167-68.  Although *Moore*, like the case *sub judice*, involved the vacating of an order within the 30-day period set forth in Section 5505, *Moore* was a custody case, which involves the overarching and ongoing question of the best interests of a child, and, thus, is always subject to modification by the court.  *See In re Davis*, 465 A.2d 614, 618 n.2 (Pa. 1983).  No such considerations are involved in the instant case.

[7] In his Concurring and Dissenting Opinion, Justice Baer suggests that our reversal of the lower court's decisions based on our finding that Appellant was deprived of a liberty interest without due process is "outside the scope of this appeal as it was not presented, and therefore necessarily not preserved by Appellant."  Concurring and Dissenting Opinion (Baer, J.) at 4.  However, as Justice Baer recognizes, the issue and the arguments in this case concern the court's *authority* to rescind or modify a prior order under Section 5505.  In addressing the court's authority under the statute, we rely on the principle of statutory construction that the legislature does not intend to violate the federal or state Constitution.  *See* 1 Pa.C.S. § 1922(3) (in ascertaining intent of General Assembly in enactment of statute, presumption exists that General Assembly did not intend to violate federal and state constitutions).  Thus, in considering the trial court's authority under Section 5505 in the instant matter, we avoid a construction of Section 5505 that would violate due process principles.

5505 in a constitutional manner, as we must, we hold that a trial court may not vacate a prior order terminating a sentence of intermediate punishment or probation based on subsequent conduct, unless that conduct constitutes a violation of specified conditions of the termination order, of which the individual had notice.[8]

Order reversed.

Justices Donohue and Dougherty join the Opinion Announcing the Judgment of the Court.

Justices Donohue and Wecht file concurring opinions.

Justice Baer files a concurring and dissenting opinion in which Chief Justice Saylor and Justice Mundy join.

---

In addition, while Justice Wecht, in his Concurring Opinion, indicates his agreement with our due process analysis, *see* Concurring Opinion (Wecht, J.) at 9, he suggests that the trial court's order constituted an abuse of discretion because there was no record evidence to support its decision, as the revocation hearing was not transcribed, and would reverse on that basis. As noted above, however, we find the issue in this case concerns the trial court's authority under Section 5505 – *i.e.,* whether it could act at all – not its *abuse* of that authority. Moreover, Justice Wecht disagrees with our determination that *M.P.* and *Eck* are distinguishable, *inter alia*, on the ground that Appellant herein had notice of the evidence that formed the basis of the trial court's decision, whereas the parties in *M.P.* and *Eck* did not. Respectfully, we see no need to engage in a lengthy debate as to the import of those Superior Court decisions, which, as noted, did not involve Section 5505. At any rate, our decision in this matter is not based on a finding that Appellant lacked notice of the evidence relied on by the trial court at the revocation hearing – he clearly had such notice; our decision is based on the fact that Appellant did not have notice that subsequent acts or behavior could result in revocation of the trial court's order.

[8] Of course, our holding in this case does not impact or preclude Appellant's separate prosecution for his subsequent DUI offense.